210 N.J. Super. 276 (1986)
509 A.2d 786
ANN BARONE, PLAINTIFF-APPELLANT,
v.
DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, BUREAU OF PHARMACEUTICAL ASSISTANCE TO THE AGED AND DISABLED, DEFENDANT-RESPONDENT.
LOTTIE ADKINS, PLAINTIFF-APPELLANT,
v.
DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, BUREAU OF PHARMACEUTICAL ASSISTANCE TO THE AGED AND DISABLED, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1986.
Decided April 24, 1986.
*278 Before Judges GAULKIN, DEIGHAN and STERN.
Edward Kopelson, Community Health Law Project, argued the cause on behalf of appellants.
*279 Melissa E. Hager, Deputy Attorney General, argued the cause on behalf of respondent (W. Cary Edwards, Attorney General, attorney; Deborah Poritz, Deputy Attorney General, of counsel).
The opinion of the court was delivered by STERN, J.S.C., temporarily assigned.
We hold that the Department of Human Services did not err in interpreting N.J.S.A. 30:4D-21, as it provided between 1981 and 1985, to require actual receipt of federal Social Security benefits as a prerequisite to receipt of state Pharmaceutical Assistance to the Aged and Disabled (PAAD) and that, as so interpreted, and as amended in 1985, N.J.S.A. 30:4D-21 is not unconstitutional.

I
Appellants are disabled persons under age 65. However, their applications for PAAD benefits were denied and they appeal. They contend: (1) that the regulations of the Department of Human Services limiting eligibility for PAAD disability benefits to those actually receiving federal Social Security disability benefits exceeded the authority of N.J.S.A. 30:4D-21, as it read at the time of their application, and (2) that the classification created by the regulations and by the 1985 amendment to N.J.S.A. 30:4D-21 is unconstitutional.
The applications for PAAD benefits were based on disability and need. Because appellants were not recipients of federal Social Security disability benefits, the denial was consistent with regulations of the Department. However, the primary question is whether those regulations were consistent with the governing statute at the time of the respective applications.
After the applications were rejected, N.J.S.A. 30:4D-21 was amended to expressly provide that needy disabled people are entitled to PAAD benefits only if they are actually receiving Social Security disability benefits, although needy people over *280 age 65 are entitled to PAAD benefits without regard to their Social Security status. Since appellants' continuing eligibility is subject to the requirements of this amended provision, we must consider the constitutionality of the statute as it provided prior to August 1, 1985, if we accept the Department's construction and, in any event, its constitutionality after the effective date of the 1985 amendment.

II
Appellants Lottie Adkins and Ann Barone filed separate eligibility applications with the Division of Medical Assistance and Health Services of the Department of Human Services (Division) for PAAD benefits in January 1985. The applications were rejected on January 25, 1985. Each applicant was advised that, because she did not meet "the age requirement of 65 years", she had "not furnished sufficient proof of disability." The rejections also contained reference to an additional prerequisite to the effect that each applicant "must be receiving Social Security Title II Disability benefits to be eligible for PAAD."
Plaintiffs appeal. The appeals were consolidated for all purposes in April 1985 and are being decided with other matters involving the same questions.[1]
Adkins was 59 and single at the time of her application for PAAD benefits. She was not eligible for federal Social Security benefits because she did not work for an employer that contributed to the federal Social Security program when she *281 commenced employment with Essex County. She retired with a permanent total disability in 1979 and began receiving a disability pension from the Essex County Employees' Retirement System. In 1984 she was receiving an annual pension of $7,919.31 from the county. The insurance coverage provided through the county pension plan did not include prescription drug coverage.
Dr. Sidney Friedman, an internist who conducted examinations for the State Division of Disability Determinations, certified that he examined Adkins in December 1980 and December 1984 and found her totally and permanently disabled according to the standards applicable to Social Security disability determinations. Dr. Friedman also found Ms. Adkins unable to work and a poor candidate for rehabilitation for future work. She had severe rheumatic and orthopedic problems as well as heart disease, gastritis, bronchitis, and psychiatric and ophthalmic conditions. These facts are not disputed for purposes of these proceedings.
Ms. Barone was 61 at the time her PAAD application was submitted. However, she was ineligible to receive Social Security benefits because she had not worked outside the home since she was age 16. A social worker for the State Commission for the Blind and Visually Impaired certified that Ms. Barone was "a registered blind person". A report of an eye examination performed on her by Dr. Philip Eicher in July 1984 showed that her near vision of 20/800 in each eye was only 20/200 with best correction. Ms. Barone certified that she also had uncontrolled diabetes mellitus, cardiovascular disease and deafness.
Ms. Barone was married at the time of her application. Her husband had received $761 in his most recent monthly Social Security check. Ms. Barone certified in January 1985 that his monthly Social Security checks were their only source of income. As in the Adkins case, these facts are not in dispute.
The Division contends that only persons actually "receiving Social Security benefits" were eligible for PAAD benefits at the *282 time of these applications. It argues that opening eligibility to others, including those considered 100% disabled for purposes other than the federal Social Security program, would substantially increase the cost of the PAAD program, possibly jeopardizing it altogether, and in any event, is beyond the legislative intent, as evidenced by the legislative history and fiscal note projections premised on information relating to the federal Social Security system.[2]

III
As noted, appellants contend that when their applications were rejected, the PAAD regulations (N.J.A.C. 10:69A-6.2) requiring receipt of Social Security benefits as a prerequisite to receiving PAAD benefits as a disabled person under 65, exceeded the statutory authority of N.J.S.A. 30:4D-21.
The act that created the PAAD program, N.J.S.A. 30:4D-20 et seq., originally the "Pharmaceutical Assistance to the Aged" program (L. 1975, c. 194, eff. August 21, 1975), supplemented the Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 et seq. (L. 1968 c. 413), the purpose of which was enunciated as follows:
It is the intent of the Legislature to make statutory provision which will enable the State of New Jersey to provide medical assistance, insofar as practicable, on behalf of persons whose resources are determined to be inadequate to enable them to secure quality medical care at their own expense, and to enable the State, within the limits of funds available for any fiscal year for such purposes, to obtain all benefits for medical assistance provided by the Federal Social Security Act as it now reads or as it may hereafter be amended, or by any other Federal act now in effect or which may hereafter be enacted. It is further the intent of the Legislature that benefits provided hereunder shall be last resource benefits notwithstanding any provisions contained in contracts, *283 wills, agreements or other instruments. [N.J.S.A. 30:4D-2; L. 1968, c. 413, § 2, as amended L. 1979, c. 365, § 1, eff. Feb. 4, 1980.]
By Chapter 499 of the Laws of 1981, the Pharmaceutical Assistance to the Aged Program was expanded to provide pharmaceutical assistance to the aged and disabled.
In January 1985 when appellants' PAAD eligibility applications were filed, N.J.S.A. 30:4D-21 read as follows:
Any single resident of this State who is either disabled pursuant to the Federal Social Security Act (42 U.S.C. section 416(i)) or 65 years of age and over whose annual income is less than $12,000.00, or any married resident whose annual income combined with that of his spouse is less than $15,000, shall be eligible for "Pharmaceutical Assistance to the Aged and Disabled" if he is not otherwise qualified for assistance under the act to which this act is a supplement. [As amended L. 1981, c. 499, § 1.][3] [Emphasis supplied]
42 U.S.C.A. § 416(i), to which N.J.S.A. 30:4D-21 referred, is part of Title II of the federal Social Security Act, which governs the federal old-age, survivors, and disability insurance benefits program. Section 416(i) covers two different topics, which are reflected in the title of subsection (i), "Disability; period of disability." Subsection (i) has three subparts. 42 U.S.C.A. § 416(i)(1) defines "disability," while 42 U.S.C.A. § 416(i)(2) and (3) relate to the "period of disability" necessary for eligibility. Neither (i)(2) nor (i)(3) touches on the meaning of "disability" itself.
Appellants contend that the phrase "disabled pursuant to the Federal Social Security Act (42 U.S.C. section 416(i))" makes clear that the applicant must be "disabled" within the meaning *284 of that subsection, not that she must actually be collecting Social Security benefits. They stress that N.J.S.A. 30:4D-21 used the phrase "disabled pursuant to the Federal Social Security Act (42 U.S.C. section 416(i))", not "eligible under," or "receiving benefits pursuant to" Title II of the Federal Social Security Act.
The Division, however, emphasizes that the PAAD provision incorporated all of § 416(i), including sub parts (2) and (3), which do not relate to the definition of "disability" but which do relate to persons applying for disability benefits under Title II of the Social Security Act.
The regulations promulgated to implement N.J.S.A. 30:4D-21, as amended in 1981, make receipt of PAAD disability benefits contingent upon "disability" for the requisite "period of disability" as defined by § 416(i). They provide for "disabled" persons under 65 who meet the financial prerequisite, only if they are actually receiving Title II Social Security disability benefits. The regulations provide:
(a) Any single permanent resident of New Jersey who is 65 years of age and over or who is under 65 and over 18 years of age and is receiving Social Security Title II disability benefits must have an annual income of less than $12,000 to be eligible for PAAD. [N.J.A.C. 10:69A-6.2(a) (as amended effective June 21, 1982) (emphasis added).]
See also N.J.A.C. 10:69A-6.1(a), as amended prior to August 1, 1985.
Appellants contend that neither the plain meaning nor the legislative history of N.J.S.A. 30:4D-21 supports the Division's determination that they were ineligible for PAAD benefits in the absence of actual receipt of Social Security disability benefits.
Judicial review of administrative actions is limited in scope. Gloucester County Welfare Bd. v. New Jersey Civil Service Comm'n, 93 N.J. 384, 390 (1983). The Supreme Court has recently set forth the applicable standard of review:
... the judicial role is restricted to three inquiries: (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) *285 whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors. Campbell v. Department of Civil Serv., 39 N.J. 556, 562 (1963); see also Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980).... [Public Service Elec. and Gas Co. v. New Jersey Dept. of Environmental Protection, 101 N.J. 95, 103 (1985).]
In this case we are concerned with the proper interpretation of N.J.S.A. 30:4D-21. While we are not bound by the interpretation of a statute as rendered by an administrative agency, particularly when inconsistent with legislative intent or plain meaning, see Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93 (1973); Fiola v. N.J. Treas. Dept., 193 N.J. Super. 340, 347 (App.Div. 1984), we must give due deference to the views and regulations of an administrative agency charged with the responsibility of implementing legislative determinations. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327 (1984); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575 (1978); Schuenemann v. Bd. of Review, 208 N.J. Super. 48 (App.Div. 1986). Delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public. New Jersey Ass'n of Health Care Facilities v. Finley, 83 N.J. 67, 79 (1980), app. dism. 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980); New Jersey Guild of Hearing Aid Dispensers v. Long, supra, 75 N.J. at 562-563; In re Suspension of Heller, 73 N.J. 292, 303 (1977); In re Guardianship Services Regulations, 198 N.J. Super. 132, 137 (App.Div. 1984). Where action of an administrative agency is challenged, "a presumption of reasonableness attaches to the action of an administrative agency and the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable or capricious." Boyle v. Riti, 175 N.J. Super. 158, 166 (App.Div. 1980). See In re Guardianship Services Regulations, supra, 198 N.J. Super. at 137.
The Legislature has delegated broad powers to the Commissioner of Human Services to promulgate rules and regulations *286 for implementation of the policies and duties delegated to him by statute. N.J.S.A. 30:4D-24 expressly provides that, "The commissioner shall by regulation establish a system of payments or reimbursements and a system for determining eligibility. ..." (emphasis added). Pursuant to this authority, the Division has adopted a comprehensive manual for the administration of the PAAD program, N.J.A.C. 10:69A-1.1 et seq., and even prior to the 1985 amendment to N.J.S.A. 30:4D-21, consistently took the position that only "... disabled residents receiving Title II Social Security Disability benefits are eligible for PAAD if they meet the income requirements." Preface to Fiscal Year 1983 Annual Report.
The Legislature has always been concerned with the fiscal ramifications of the PAAD program. N.J.S.A. 30:4D-25, as adopted in 1978, and as it still provides, notes, "That although the Legislature is desirous of continuing the program as it currently exists it recognizes that fiscal constraints and a heightened public awareness of the taxpayers burden" require limited State contributions to the program and, in turn, limitations on eligibility. The adoption of N.J.S.A. 30:4D-21.1 in 1983, terminating persons who receive cost of living adjustments from the Social Security Administration which meet the State minimum income level, is illustrative of the Legislature's fiscal concern and indicates the perceived relationship between the State program and actual receipt of Social Security benefits.
According to the committee statement accompanying the 1985 amendment, L. 1985, c. 291, "The definition of an eligible disabled resident is clarified to mean a recipient of Social Security Disability Insurance benefits". (Emphasis added). This explanation in the statement, particularly when coupled with the fiscal note evidencing an intent to expand the program,[4] strongly supports the position that the amendment *287 confirmed the intent of the original provision. See Matawan v. Monmouth County Bd. of Taxation, 51 N.J. 291, 299 (1968); Wood v. Wood, 160 N.J. Super. 597, 601-602 (App.Div. 1978). But see State v. Hodge, 95 N.J. 369, 374 (1984).
Accordingly, the eligibility regulations were based, at least in part, on fiscal necessity and are consistent with governing legislation. Thus, N.J.A.C. 10:69A-6.2(a), which, since the 1981 amendment has required receipt of Social Security disability benefits as a prerequisite for eligibility for PAAD benefits, is a valid administrative regulation.

IV
By Chapter 291 of the Laws of 1985, effective August 1, 1985, the Legislature amended N.J.S.A. 30:4D-21 to provide that:
Any resident of this State who is either a recipient of Disability Insurance benefits under Title II of the federal Social Security Act (42 U.S.C. § 401 et seq.) or 65 years of age and over and whose annual income is less than $13,250.00 if single or, if married, whose annual income combined with that of his spouse is less than $16,250.00, shall be eligible for "Pharmaceutical Assistance to the Aged and Disabled" if he is not otherwise qualified for assistance under P.L. 1968, c. 413 (C. 30:4D-1 et seq.).[5]
*288 While admitting that the statute now requires actual receipt of Social Security benefits as a prerequisite to their eligibility, appellants assert that the statute is unconstitutional.[6] We hold that classification, as clarified by the 1985 amendment, is constitutional.
A statute is presumed to be constitutional and should, of course, be construed where possible to promote its constitutionality. Right to Choose v. Byrne, 91 N.J. 287, 311 (1982); N.J. State League of Municipalities v. Kimmelman, 204 N.J. Super. 323, 326 (App.Div. 1985). As noted by our Supreme Court in Paul Kimball Hosp. v. Brick Tp. Hosp., 86 N.J. 429 (1981):
... [T]he Legislature has wide discretion in determining the perimeters of a classification, Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. [381] at 390, distinctions may be made with substantially less than mathematical exactitude, Lane Distributors, Inc. v. Tilton, 7 N.J. 349, 358-359 (1951), and an adequate factual basis for the legislative judgment is presumed to exist, Burton v. Sills, 53 N.J. 86, 95 (1968), app. dism. 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed2d 748 (1969). We must also be mindful of the strong presumption in favor of constitutionality, David v. Vesta Co., 45 N.J. 301, 315 (1965), and the traditional judicial reluctance to declare a statute void, a power to be delicately exercised unless the statute is clearly repugnant to the Constitution. Brunetti v. New Milford, 68 N.J. 576, 599 (1975); Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. at 388; Gangemi v. Berry, 25 N.J. 1, 10-11(1957). [at 446-447.]
Appellants base their attack on the equal protection provisions of the Fourteenth Amendment and Article I, paragraph 1 of the State constitution.
The appropriate analysis under the federal Constitution was recently outlined by our Supreme Court in U.S.A. Chamber of Commerce v. State, 89 N.J. 131 (1982):
... Equal protection claims under the Fourteenth Amendment must be tested by federal guidelines. The United States Supreme Court's equal protection analysis encompasses a three-tier approach. Matthews v. Atlantic City, 84 N.J. 153 (1980). This may be summarized as follows: When the legislation *289 regulates `fundamental rights' or `suspect classes,' it will be subject to `strict scrutiny' and the state will be required to demonstrate (1) that a compelling need justifies the legislation and (2) that no less restrictive alternative will accomplish that state objective. See Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). At the other end of the spectrum is the rational basis test. Under this standard of review a court inquires first whether there is a conceivable legitimate state objective and second whether the classification selected is rationally related to that objective. Id. at 371-72, 91 S.Ct. at 1851-52, 29 L.Ed.2d at 541; Dandridge v. Williams, supra, 397 U.S. [471] at 486-87, 90 S.Ct. [1153] at 1162, 25 L.Ed.2d [491] at 502-03 [1970]. In considering the second, categories need not be formed with mathematical nicety and legislatures may attack a problem one step at a time. Williamson v. Lee Optical, supra, 348 U.S. [483] at 488-89, 75 S.Ct. [461] at 464-65, 99 L.Ed. [563] at 572-73 (1955).
The third approach, articulated by the Supreme Court in Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), is an intermediate one. The appropriateness of intermediate scrutiny depends upon the character of the legislative classification or the nature of the rights affected by the statutory scheme. It may be that a `semi-suspect' classification, like gender, is implicated or that a fundamental right is being substantially affected in an indirect manner. E.g., Bullock v. Carter, 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92, 100 (1972). In these circumstances the legislative classification must serve important governmental objectives and must be substantially related to achievement of those objectives. [at 157-158.]
An independent evaluation must be made for purposes of the claim under our state Constitution. As noted by Justice Pollock in Right to Choose v. Byrne:
... In New Jersey, equal protection of the laws is assured not only by the Fourteenth Amendment to the United States Constitution, but also by Art. I, par. 1 of the state Constitution. Levine v. Dep't of Insts. & Agencies, 84 N.J. 234, 257 (1980); Jersey Shore Medical Center v. Estate of Baum, 84 N.J. 137, 148 (1980). In construing the constitutional guarantees of equal protection, this Court has frequently applied a similar standard of review, whether the guarantee arose from the state or federal Constitution. Levine v. Dep't of Insts. & Agencies, supra, 84 N.J. at 257.
Conventional equal protection analysis employs `two tiers' of judicial review. Briefly stated, if a fundamental right or suspect class is involved, the legislative classification is subject to strict scrutiny; the state must establish that a compelling state interest supports the classification and that no less restrictive alternative is available. With other rights and classes, however, the legislative classification need be only rationally related to a legitimate state interest. United States Chamber of Commerce v. State, 89 N.J. 131, 157-58 (1982).
* * * * * * * *
Although we have employed the conventional two-tiered equal protection analysis, the conflicting individual and governmental interests do not easily fit *290 into a rigid analytical structure. See Matthews v. Atlantic City, 84 N.J. 153, 165 (1980).
Nearly ten years ago, Chief Justice Weintraub wrote:
Mechanical approaches to the delicate problem of judicial intervention under either the equal protection or the due process clauses may only divert a court from the meritorious issue or delay consideration of it. Ultimately, a court must weigh the nature of the restraint or the denial against the apparent public justification, and decide whether the State action is arbitrary. In that process, if the circumstances sensibly so require, the court may call upon the State to demonstrate the existence of a sufficient public need for the restraint or the denial. [Robinson v. Cahill, 62 N.J. 473, 491-92, cert. denied sub. nom Dickey v. Robinson, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973)].
Shortly thereafter the Court rejected a rigid equal protection test based either on mere rationality or strict scrutiny. Collingswood v. Ringgold, 66 N.J. 350, 370 (1975), appeal dismissed, 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 826 (1976). The following year, the Court employed a balancing test in analyzing equal protection claims under the state Constitution. Writing for a unanimous Court, Justice Pashman stated: "[W]here an important personal right is affected by governmental action, the Court often requires the public authority to demonstrate a greater `public need' than is traditionally required in construing the federal constitution." Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., supra, 80 N.J. [6] at 43. [91 N.J. at 304-309.]
Under these standards the classification at issue here does not merit the strictest level of scrutiny. A classification affecting entitlement to pharmaceutical assistance does not affect a "fundamental" right,[7] and the disadvantaged class  those among the financially needy disabled who do not receive Social Security benefits  is not "suspect." Cf. Right to Choose v. Byrne, supra, 91 N.J. at 305.
Generally, in the area of social welfare and economics the State need show only that there is a rational basis for the classification or that it is rationally related to some legitimate government interest. Schweiker v. Wilson, 450 U.S. 221, 234, *291 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186, 197-198 (1981); Mathews v. DeCastro, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389, 394 (1976); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970). As the United States Supreme Court has pointed out in Schweiker v. Wilson:
The Court has said that, although this rational basis standard is `not a toothless one,' Mathews v. Lucas, 427 US 495, 510, 49 L Ed 2d 651, 96 S.Ct 2755 [2764] (1976), it does not allow us to substitute our personal notions of good public policy for those of Congress:
`In the area of economics and social welfare, a State does not violate the Equal Protection Clause [and correspondingly the Federal Government does not violate the equal protection component of the Fifth Amendment] merely because the classifications made by its laws are imperfect. If the classification has some `reasonable basis,' it does not offend the Constitution simply because the classification `is not made with mathematical nicety or because in practice it results in some inequity.' Lindsley v. Natural Carbonic Gas Co. 220 US 61, 78, [55 L Ed 369, 31 S Ct 337, 340].' Dandridge v. Williams, 397 US, at 485, 25 L Ed 2d 491, 90 S Ct 1153 [at 1161].
The Court also has said: "This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary.' Massachusetts Bd. of Retirement v. Murgia, 427 US 307, 314, 49 L Ed 2d 520, 96 S Ct 2562 [2567] (1976). See also United States Railroad Retirement Bd. v. Fritz, 449 US 166, 66 L Ed 2d 368, 101 S Ct 453 (1980). As long as the classificatory scheme chosen by [the legislature] rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred. [450 U.S. at 234-235, 101 S.Ct. at 1182-1183, 67 L.Ed.2d at 198.]
Compare, e.g., Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Medora v. Colautti, 602 F.2d 1149, 1154 (3 Cir.1979) (holding that Pennsylvania's requirement that welfare applicant first apply for Social Security benefits and that denial thereof precluded state assistance did not rationally further state interest where state assistance was more liberal than social security; there state program denied equal protection); Right to Choose v. Byrne, supra. See also the "first step" *292 analysis in Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955), reh'g den. 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256 (1955); N.J. Restaurant Ass'n v. Holderman, 24 N.J. 295, 300 (1957).
The Division justifies the classification on the basis that limiting eligibility to recipients of Social Security disability benefits saves the State substantial money by eliminating the need for the PAAD program to make disability determinations. Stated differently, the Division asserts that the State has neither the funds nor the mechanism to examine all applicants to determine "disability" for purposes of establishing eligibility.[8]
We hold that there is a rational State purpose for so providing. The Supreme Court has stated that "[i]f the Legislature wishes to exclude a certain class from the coverage of the [workers' compensation] act it may, of course, do so, but only where the classification bears a reasonable and just relationship to the general object of the legislation or to some substantial consideration of public policy or convenience or the service of the general welfare." DeMonaco v. Renton, 18 N.J. 352, 360 (1955). In DeMonaco, the Court found that the Legislature had no acceptable reasons for excluding a certain class of employees from workers' compensation coverage. Here, we conclude that the ability to rely on federal Social Security administrative determinations is fundamental to the integrity of the PAAD program and its financial ability to provide benefits, and therefore that the classification excluding the disabled needy under 65 not receiving Social Security is rational.
*293 Administrative convenience is generally acceptable as a rational basis for classification, at least when the interest affected by the classification is neither fundamental nor suspect. As Justice White noted in his concurrence in Vlandis v. Kline, 412 U.S. 441, 459, 93 S.Ct. 2230, 2240, 37 L.Ed.2d 63, 75 (1973), "... it must now be obvious, or has been all along, that, as the Court's assessment of the weight and value of the individual interest escalates, the less likely it is that mere administrative convenience and avoidance of hearings and investigations will be sufficient to justify what otherwise would appear to be irrational discriminations." We agree and conclude that in this type of situation administrative convenience or expense is a justifiable and rational basis for making actual receipt of federal Social Security benefits a prerequisite to receipt of PAAD benefits. We know of no other way to permit a valid determination of "disability" without substantial expense jeopardizing the program's financial integrity. Moreover, we see no basis for affording appellants greater protection under the State constitution than under the federal. Cf. Right to Choose v. Byrne, supra; U.S.A. Chamber of Commerce v. State, supra, 89 N.J. at 159.
In Pleasure Bay Apts. v. Long Branch, 66 N.J. 79 (1974), two municipalities were limiting municipally funded garbage pickup to curbside collections, thus excluding apartment complexes with on-grounds dumpsters from their free collection service. The Supreme Court upheld the classification, relying in part on the cases permitting the Legislature to consider the "practical exigencies, including administrative convenience and expense" justifying the classification. Id. at 93, quoting N.J. Restaurant Ass'n v. Holderman, supra, 24 N.J. at 300 (1957) (Weintraub, C.J.).
We recognize that the Eighth Circuit has determined that a classification similar to the one at issue in this case violated the federal equal protection guarantee applicable to the states. Ranschburg v. Toan, 709 F.2d 1207 (8 Cir.1983). The court examined Missouri's "Utilicare" program providing financial *294 assistance for heating expenses to "elderly" or "disabled" heads of households and their spouses, whose means did not exceed $7,500. Id. at 1208. "Elderly" was defined in terms of age only, relating to persons "having reached the age of sixty-five." But "disabled" was defined to include only those "totally and permanently disabled or blind" persons who were receiving one of six enumerated forms of state or federal public assistance benefits. Id. at 1208-1209. The plaintiff was a totally and permanently disabled person who satisfied the low-income criterion, but who was not a recipient of benefits under one of six programs specified in the statute. Id. at 1209. Instead, she received financial assistance under the state's Medical Assistance program, which determined disability under standards similar to Social Security and other programs covered by the statute. Plaintiff's application was denied because she was not a recipient of one of the six specified assistance programs, and therefore did not satisfy the Utilicare statute's definition of "disabled."
The Court rejected the state's argument that the classification advanced its interest in limiting funding to the most needy. Id. at 1210. The fact that an applicant was receiving assistance from one of the enumerated programs did not establish that he was needier than someone who, like plaintiff, was receiving benefits from the Medical Assistance program. The fact that so many other similarly situated disabled needy, in addition to Social Security recipients, were receiving Utilicare benefits and the fact that plaintiff had been determined "disabled" for purposes of State assistance gave rise to a denial of equal protection.
We conclude that the reasoning of Ranschburg does not control disposition of this case. Here, all needy persons eligible for federal Social Security benefits are entitled to State PAAD. Further, the PAAD program does not incorporate benefits from other programs providing benefits to the needy or disabled, in addition to Social Security. If the state were required to create a separate bureaucracy to determine "disability," significant *295 administrative expenses would be incurred. Thus, the state is justified in its determination to grant PAAD benefits only to those who actually receive federal Social Security benefits. Although there may be some people similarly situated in terms of disability and income who receive Social Security as those who do not, the classification is as rational and valid as the classification embodied in section 416 of the federal Social Security Act. Cf. Schweiker v. Wilson, supra; Matthews v. DeCastro, supra; Helvering v. Davis, 301 U.S. 619, 640, 57 S.Ct. 904, 908, 91 L.Ed. 1307, 1314 (1936); Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1936). Social Security eligibility is denied for some individuals who do not receive the same or similar benefits, although equally needy or disabled.
We conclude that there is a rational and justifiable basis for requiring receipt of Social Security disability benefits as a prerequisite to PAAD benefits when the applicant is under 65. Accordingly, the decisions under review are affirmed.
NOTES
[1] We bypass the question of "exhaustion of administrative remedies" which arises from the absence of re-submission to the agency and the absence of a hearing before an Administrative Law Judge and review by the Commissioner. Because (1) the issues involved on this appeal involve questions of law and statutory interpretation previously decided adversely to the applicants by the Commissioner; (2) the issues involved in this appeal and others being decided today are recurring ones; and (3) the matter also concerns the constitutional question fully briefed by the parties, we proceed to consideration of the merits. For the same reasons, we do not have to consider whether the applications involved in these cases were denied or merely rejected.
[2] A fiscal note prepared in 1982 with respect to Assembly Bill No. 1503 which was not enacted, indicated that the proposed legislation would "extend" PAAD benefits to disabled persons who were not covered by federal Social Security but who were classified as disabled under other federal and state laws, thereby making an estimated 1,050 additional people eligible for PAAD benefits.
[3] Under the previous version of N.J.S.A. 30:4D-21, only the financially needy aged 65 and over were eligible for PAAD. L. 1981, c. 499, expanded eligibility, raising income eligibility limits from $9,000 to $12,000 for singles and from $12,000 to $15,000 (combined with a spouse's income) for married persons, and making PAAD benefits available to those "disabled pursuant to the federal Social Security Act (42 U.S.C. section 416(i))" as well as to those "65 years of age and over" with the requisite financial limitations. The statement accompanying Assembly No. 3439, which was enacted as L. 1981, c. 499, reiterated that, "The bill also includes disabled individuals in the [PAAD] program" and that "Disabled individuals are those persons disabled pursuant to the Federal Social Security Act (42 U.S.C. Section 416 (i))."
[4] The statement of the Senate Revenue and Appropriations Committee accompanying the 1985 amendment further reflects ongoing legislative concern for the program's financial integrity and ability to survive. As noted in the statement concerning "fiscal impact":

Fiscal Impact:
Senate Bill No. 3000, the FY 1985-86 appropriations bill, provides $19.5 million in additional funding for an expansion of the PAAD/Lifeline programs, including added administrative expenses. The source of the increased funding is the Casino Revenue Fund. Information compiled by the Department of Human Services and the Office of Legislative Services indicates that the budgeted increases should be sufficient, or very close to sufficient, to support the expansion of benefits resulting from higher income eligibility levels. The committee recommends that expenditures be monitored throughout the year to ascertain the need for supplemental funding at some later date.
[5] The amendment increased the financial eligibility requirements from $12,000 to $13,250 for single persons and from $15,000 to $16,250 for married couples. There were amendments to 42 U.S.C. § 416(i) in 1984, but they do not affect the issues in this case.
[6] In light of our holding on the constitutional issue, we do not address whether the statute is severable or, if unconstitutional, it would require the entire PAAD program to fall, at least in the absence of a new appropriation to fund the benefits for all "disabled" persons meeting the fiscal limitations. There is no issue raised directly with respect to treating senior citizens 65 and over differently from those under 65.
[7] Appellants rely on N.J. Const., Art. IV, § 7, ¶ 2 (the casino amendment), to support their argument that, as low-income disabled residents of this state, they have constitutional entitlement to PAAD benefits. However, we do not construe this constitutional provision so as to raise pharmaceutical assistance to the low-income disabled to the status of a "fundamental" constitutional right or the group of disabled low income residents to the status of a "suspect" class for purposes of protection.
[8] Although one can be medically disabled to the same extent as a Social Security recipient, given the definition of "disability" in 42 U.S.C. § 416(i), actual receipt of Social Security benefits is the only basis for assuring a finding of "disability."