**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1679-16T1

BRIAN NAMETKO,

    Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

    Respondent.

_____

Argued May 10, 2018 — Decided August 9, 2018

Before Judges Simonelli and Rothstadt.

On appeal from the New Jersey State Parole
Board.

James H. Maynard, Designated Counsel, argued
the cause for appellant (Maynard Law Office,
LLC, attorneys; James H. Maynard, on the
briefs).

Christopher C. Josephson, Deputy Attorney
General, argued the cause for respondent
(Gurbir S. Grewal, Attorney General, attorney;
Melissa Dutton Schaffer, Assistant Attorney
General, of counsel; Christopher C. Josephson,
on the brief).

PER CURIAM

Brian Nametko appeals from the New Jersey State Parole Board's (Board) final determination revoking his parole. For the reasons that follow, we affirm.

The facts leading to Nametko's conviction are set forth in detail in our opinion affirming his sentence and need not be repeated at length here. See State v. Nametko, No. A-3939-12 (App. Div. Feb. 5, 2014) (slip op. at 1-3). Suffice it to say, his conviction arose from having sexual relations with a fourteen-year-old girl that he met on the internet when he was twenty-five years old. As discussed in our earlier opinion, he pled guilty to third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and the court sentenced him to four years of incarceration, and upon release, parole supervision for life (PSL), N.J.S.A. 2C:43-6.4(a). Id. at 1, 4. When Nametko was released from prison in August 2015, his parole was subject to the conditions of PSL that included obtaining permission from his parole officer if he were to leave the state (A7);[1] prohibiting him from using social networking profiles (A24); and refraining from actually or attempting to initiate, establish or maintain contact with a minor (B1 and B2).

---

[1] See N.J.A.C. 10A:71-6.12(d) and (e). The conditions are referred to as A7, A24, B1 and B2 based upon their designation as such in the four-page "Conditions of Supervision" document Nametko signed upon his release from prison.

The condition restricting his access to social media did not include a total ban against internet use. Instead, Nametko was only restricted from using social networking services unless he received permission to use them from his district parole supervisor.

Despite the conditions of his PSL, after being released from prison, Nametko left the state without obtaining permission from his parole officer, used social networking applications, and initiated and established contact with some minors while attempting to contact others. Nametko's violations were brought to the attention of his parole officers on October 9, 2015, when they received a telephone call from the Netcong Police Chief asking about Nametko and the conditions of his supervision. The police chief informed them that he received reports that Nametko had been texting girls at the high school, which he confirmed by speaking to several high school students who received texts from Nametko.

On October 13, 2015, Nametko's parole Officers, Daron Be and Peter Yasuk, met with the police chief, various members of his police department, the Morris County Prosecutor's Office (MCPO), and representatives of Lenape Valley High School, who had information that Nametko sent messages through Instagram to several minor females at the school. The parole officers were given copies of the messages. They were also informed that Nametko

had taken two male juveniles from the school to Manhattan in his car.

Based upon Nametko's apparent violation of his PSL conditions, Be issued a parole warrant, which ultimately led to Nametko being detained at the MCPO, where Be and another officer interviewed Nametko on October 27, 2015.[2] During the interview, Nametko admitted to going to New York City with the two boys, who are seniors in high school, and stated that he traveled to New York City once or twice a week. Also, Nametko stated that one of the boys logged into Facebook on his phone, chatted with other minors and downloaded sexual photos of them.

At the interview, the parole officers told Nametko that no criminal charges were being brought against him. Nevertheless, although no Miranda[3] warning was given at the beginning of the interview, one of the officers interviewing Nametko read him his Miranda rights approximately fifteen minutes into the interview. When asked if he understood them, Nametko replied that he did, but when asked if he would sign a waiver and continue speaking to them, Nametko asked the parole officers if he should have his

---

[2]   After his release to PSL, Nametko was involuntarily committed to St. Clare's hospital. He was released from the hospital on October 27, 2015, at which point Be issued and executed the parole warrant for Nametko that resulted in his detention.

[3]   Miranda v. Arizona, 384 U.S. 436 (1966).

attorney present. The officers stated they could not give him advice, but told him that he was not facing any new charges, and the interview only concerned the status of Nametko's parole. Nametko debated out loud whether he should obtain an attorney, and decided if no new charges were being brought, then he would waive his rights. He signed the form and continued speaking with the parole officers.

After being charged with parole violations and re-incarcerated pending a hearing, on February 5, 2016, Nametko filed a motion to suppress his statements to his parole officers. He relied upon their "[f]ailure to provide [him with] the Miranda [w]arning in a timely manner during a custodial interrogation; and" because he "was incapable of knowingly waiving his Miranda [r]ights due to his 'diminished capacity.'"

Nametko elected to waive his scheduled probable cause hearing and consented to its conversion to a final hearing, which was held before a hearing officer on February 11, 2016. Be, Nametko and his father, Joseph Nametko, testified at the hearing.

Be testified about Nametko's violation of PSL Condition A7 that restricted him from leaving the state without permission. He primarily relied upon an October 3, 2015 parking ticket that was issued to a vehicle in New York City belonging to Nametko; an October 7, 2015 Netcong Police Department report that indicated

Nametko took two juvenile males to New York City; an October 27,

2015 report detailing his interview of Nametko on that date;[4] and

---

[4] Over Nametko's objection at the hearing, Be read from the October 7, 2015 police report and referred to information contained in the October 27, 2015 report. The October 27, 2015 report contained the following:

> Miranda was signed voluntarily as Nametko agreed to speak with us. The basis of the interview consisted of the following: Nametko claims that he is in a relationship with [a young girl] who he believes to be of age. He states that he met her through a friend and that she is the Creative Artistic Director for his company —Nametko Financial, LLC. He claims that she attends Las Vegas University and is from the State of Oregon. He admitted to having booked a trip to Las Vegas for the end of October to be with her. Nametko admitt[ed] to Social Networking, stat[ing] since [the girl] was running it, it would be ok. He admitted that he spends his time hanging out with his friends: [the two boys.] He admitted to having social networking apps / encryption apps on [his] phone such as [F]acebook / Signal. He claimed he gave [his] phone to [the boys] which according to him are both [eighteen] years old, for a period of [forty-eight] hours in which they downloaded the app. He admitted to NYC out of state travel. He admitted to having pictures of his victim in which he claimed [the boys] downloaded the pictures when they used his phone. Nametko willingly provided the passcode to his Apple Iphone as 5653. Nametko also provided [his parole officer (PO)] with contact information that he had written down for [the two boys and the one girl]. Towards the end of the interview PO stepped out of the interview room to speak with [police detectives]. [One d]etective provided [the]

photographs posted on Nametko's Instagram account after he was released from prison, which depicted him with the two boys in New York City, in front of a specific New York hotel, and his car parked on West 57th Street in New York City.

As to PSL Condition A24, Be referred to various documents that showed Nametko had conversations with minors on Instagram and that Nametko maintained several social media accounts in his name. Be also referenced the October 7, 2015 police report that discussed an interview of a female minor and the fact that Nametko tried to contact five young girls through Snapchat.

Addressing PSL Condition B2, Be relied upon the police report to confirm Nametko's contact with the two young boys he took to New York and another female minor. Be also testified about the meeting he attended on October 13, 2015 with the Netcong Police Department, the Morris County Prosecutor Office detectives, a member of the State Parole Board, and personnel from Lenape Valley High School regarding Nametko's interactions with children. In addition, Be relied upon statements from female minors indicating Nametko attempted to contact them through the internet. Other

PO with new social networking documentation from "Instagram" which was provided to her by a [different female] juvenile which shows a conversation [between] the juvenile . . . and Nametko.

photographic evidence also established that Nametko contacted and was dating a minor.

At the hearing, Nametko's father testified that after his son's release from prison, Nametko engaged in manic behavior that was directly attributable to his mental illness. According to medical records, Nametko suffered from bi-polar disorder for which he was not always taking his prescribed medication. During the six weeks following his release, Nametko's father testified that Nametko attempted to spend large amounts of money on suits, multiple cars, and on "partial ownership of a jet."

After the hearing, the hearing officer found that the evidence did not establish that Nametko's behavior attributable to his bi-polar condition excused his violation of the conditions of his PSL. He stated:

> While it was argued [Nametko] had a "diminished capacity" because of his mental health issues, . . . he can distinguish between []appropriate and inappropriate behavior and this defense should not excuse him from the calculated and reckless decision-making he exhibited on this PSL trial. Displaying manic behavior coupled with bouts of financial extravagance is one matter but having prolonged, inappropriate communications with those who are underage is yet another concern and one that must not be overlooked or let gone unnoticed.

The hearing officer specifically found the evidence of Nametko's violations included proof that he "traveled outside the

A-1679-16T1

State of New Jersey without the permission of [his] parole [supervisor] and also utilized an electronic device to contact minors in a consistent and sustained manner[,]" and considered it in light of the "circumstances surrounding [Nametko]'s commitment offense[,] where he used an electronic device to contact a female minor, share graphic imagery, and ultimately have sex with her at his parent's home and in New York." The hearing officer concluded that Nametko's "criminal history [was] exclusively sex crimes-related[,]" and therefore, under the circumstances he was "not a suitable candidate for a return to the community" and his parole should be revoked for a period of twelve months.

After Nametko challenged the hearing officer's determination, a Board Panel issued a decision on March 2, 2016, concurring with the hearing officer's findings that Nametko violated PSL Conditions A7, A24, and B2,[5] and recommended revocation of parole for a period of twelve months. The Board Panel relied upon the finding that after being paroled, Nametko "proceeded to leave the State of New Jersey, use an electronic device to social network, and had contact with underage females," and revoked Nametko's parole for twelve months.

---

[5]   After Nametko appealed from the Board Panel's decision, the panel amended its decision to remove its finding that Nametko violated PSL Condition B1.

Nametko appealed the Board Panel's decision to the Board, which, on November 23, 2016, issued a written final decision, affirming the Board Panel's March 2, 2016 decision as amended. The Board found that "clear and convincing evidence exist[ed] that [Nametko] has seriously and persistently violated the terms and conditions of his [PSL] status and that revocation of that status is desirable." In its decision, the Board addressed Nametko's contention that "his constitutional rights not to incriminate himself" were violated with the admission of his October 27, 2015 statement and the hearing officer's reliance on hearsay statements. It also addressed his argument that "at the time of the charged parole violations, . . . Nametko was suffering from severe [b]i-[p]olar disorder that disabled his capacity to know correct from incorrect behavior." It concluded that contrary to Nametko's contentions, "the Board panel reviewed and considered all relevant facts, evidence and testimony pertaining to . . . Nametko's violations of the conditions of his [PSL] and determined that there was clear and convincing evidence that he violated the conditions of his [PSL] status."

The Board confirmed that Nametko was provided all of the required due process safeguards to which he was entitled, which included, a "hearing before a neutral and detached hearing officer, . . . represent[ation] by [an attorney,] . . . the opportunity

to testify on his own behalf, to cross examine witnesses, to argue against the violations charged, and to [present] evidence and witness testimony." It observed that both Nametko and the parole officer presented evidence about "Nametko's personal, criminal, and mental health histories, his history on [PSL], and the parole violations, charged against him."

The Board described the evidence as follows:

> The hearing record and summary included . . . testimony and evidence [about] Nametko's mental health episodes prior to the charged violations, his having been "fired" from his job, his parent's desire to have him removed from their home, his alleged threats of violence to medical personnel, his having travelled to New York in the company of minors, his use of and presence on, electronic social networking sites, and his actual and/or attempted virtual and/or actual, contact with minors for both sexual and non-sexual purposes. Included in the evidence submitted by the Division of Parole, was a traffic citation placing . . . Nametko in New York City on October 3, 2015; information from other law enforcement authorities (including photographic evidence) indicating that . . . Nametko had taken two juveniles into New York City; investigative reports from other law enforcement authorities (together with testimony of discussions between said authorities and parole officers) and supporting documentation, showing maintenance and use by . . . Nametko of several electronic social networking accounts and showing actual and/or virtual contact with minor females resulting from use of said social networking accounts.

A-1679-16T1

The record and summary also included reference to [Nametko's counsel's] written and oral pre-, at-, and post-hearing submissions regarding the necessity for the hearing officer to disallow and disregard statements and evidence elicited from . . . Nametko in alleged violation of his right against self-incrimination; testimony and evidence demonstrating the fact that [he] was, during the times relevant to the charged parole violations, suffering from a severe mental health disorder that seriously disabled his ability to know and judge correct from incorrect behavior; and testimony and argument regarding the unreliability of twice- and three-times removed, hearsay evidence alleged to have been presented by the Division of Parole. Such evidence included close questioning of . . . Nametko's parole officer concerning the basis or purported basis for the conclusions he derived from investigative reports from other law enforcement authorities.

The Board concluded that the hearing officer properly considered all of the evidence and the parties' arguments before reaching his conclusion. It similarly found the Board Panel considered the entire record and correctly reached the conclusion that "Nametko violated the . . . terms and conditions of his [PSL], that the violations were serious and persistent, and that revocation of his [PSL] status is warranted and desirable."

On appeal to us, Nametko argues that the Board should not have considered the statements he made to his parole officers without receiving Miranda warnings or any of the double and triple hearsay statements testified to by Be. He also contends that

12                                                    A-1679-16T1

regardless of that evidences' admission, it did not establish clearly and convincingly that Nametko had the mental capacity to commit the PSL violations. Additionally, he argues that his PSL's ban on his accessing social media is unconstitutional. We disagree.

Our review of the Board's decision is limited. Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004). "'Parole Board decisions are highly individualized discretionary appraisals,' and should only be reversed if found to be arbitrary or capricious." Id. at 179-80 (citations omitted). We "must determine whether the factual finding could reasonably have been reached on sufficient credible evidence in the whole record." Id. at 179 (citations omitted). In making this determination, we "may not substitute [our] judgment for that of the agency, and an agency's exercise of its statutorily-delegated responsibilities is accorded a strong presumption of reasonableness." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002) (citations omitted). Accordingly, "[t]he burden of showing that an action was arbitrary, unreasonable or capricious rests upon the appellant." Ibid. (citing Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987)).

13

Applying this deferential standard, we find no merit to Nametko's contentions and affirm substantially for the reasons expressed by the Board in its final decision, which we conclude was "supported by sufficient credible evidence on the record as a whole[.]" R. 2:11-3(e)(1)(D). We add only the following comments as to each of Nametko's arguments.

We first reject Nametko's contention that he should have received Miranda warnings before being interviewed on October 27, 2015. Nametko was not entitled to those warnings before making statements about his parole violations because he was not confronted with "a formal arrest." J.B. v. N.J. State Parole Bd., 229 N.J. 21, 36 (2017) (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984)). "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (citation omitted); see also State v. Davis, 67 N.J. 222, 226 (1975) ("It is clear that the Miranda rule is not applicable to the routine parole interview between a parole officer and a parolee."). Absent any evidence that Nametko was confronted with new charges, Miranda simply did not apply.

We also find to be without merit Nametko's argument that "no legally competent evidence remains in support of the charges

14

against him[,]" because the only evidence adduced at his hearing, other than his admissions, came from inadmissible hearsay testimony. Contrary to Nametko's position, hearsay is admissible in parole revocation hearings, as long as there is "some legally competent evidence [that] support[s] each ultimate finding of fact[.]" Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 250 (2008) (citing N.J.A.C. 1:1-15.5); N.J.S.A. 52:14B-10(a)(1) (stating "[t]he parties shall not be bound by rules of evidence . . . [and a]ll relevant evidence is admissible"); N.J.R.E. 101(a)(3). We conclude that the Board's decision was amply supported by substantial competent, credible evidence of Nametko's parole violations, even without considering his statements to his parole officer on October 27, 2015.

Next, we also reject Nametko's contention that the condition to his PSL requiring that he not use social media without permission is unconstitutional, and find inapposite his reliance on J.I. v. N.J. State Parole Bd., 228 N.J. 204 (2017), which addresses a total ban on a parolee's access to the internet, as well as his reliance on Packingham v. North Carolina, 582 U.S. ___, 137 S. Ct. 1730 (2017), which considers the constitutionality of a criminal statute. Here, Nametko was not subjected to a complete ban on his use of a computer or on his access to the internet. Rather, he was required to comply with a permissible

limited condition related to his offense.  See <u>J.B. v. N.J. State Parole Bd.</u>, 433 N.J. Super. 327 344 (App. Div. 2013); <u>see also</u> <u>Packingham</u>, 582 U.S. ___, 137 S. Ct. at 1737 ("[T]he First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor.").  The challenged condition was wholly permissible.

Last, we address Nametko's contention, that under the criminal code's provisions addressing mens rea, <u>see, e.g.</u>, N.J.S.A. 2C:2-2; N.J.S.A. 2C:4-2, he suffered from a diminished capacity due to his mental health issues and, as a result, the Board failed to meet its burden to establish by clear and convincing evidence that he knowingly and purposefully engaged in the conduct giving rise to the violations.  We conclude again that his argument is without merit, as the mens rea requirements Nametko cites are inapplicable to parole violation matters that are guided only by the inquiry of whether clear and convincing evidence established Nametko violated the conditions of his PSL.  <u>See</u> N.J.S.A. 30:4-123.63(d).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1679-16T1