**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1183-17T4

R.A.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES and CAMDEN
COUNTY BOARD OF SOCIAL SERVICES,

     Respondents-Respondents.

_____

Submitted October 22, 2018 – Decided October 29, 2018

Before Judges Fasciale and Gooden Brown.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Cowart Dizzia LLP, attorneys for appellant Deptford Center for Rehabilitation and Healthcare (Lycette Nelson, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Patrick Jhoo, Deputy Attorney General, on the brief).

PER CURIAM

R.A. appeals from a September 13, 2017 final agency decision by the Department of Human Services Division of Medical Assistance and Health Services (DMAHS) concluding that R.A. failed to provide financial verifications after receiving multiple requests by the county welfare agency (CWA). The agency concluded that the CWA was unable to complete its eligibility determination because of R.A.'s failure to produce the required information. We affirm.

In January 2016, R.A.'s son and designated representative, C.A., filed R.A.'s Medicaid application. One month later, the CWA advised C.A. that the application was incomplete, and requested that C.A. produce additional information including verifications of R.A.'s financial resources by March 12, 2016. In April 2016, the CWA requested verification as to the source of a deposit to a bank account on June 20, 2013, in the amount of $4556. The CWA requested the missing information and verifications so that it could determine whether R.A. was eligible for Medicaid. C.A. failed to produce the information by a new deadline of April 28, 2016.

The CWA then extended the deadline to May 13, 2016. The CWA learned that the $4556 deposit related to the sale of R.A.'s home, and requested the house appraisal, a settlement check, and proof of how the sale proceeds were spent. C.A. failed to provide the requested information by an extended deadline of June 23, 2016. The CWA then denied the application on June 29, 2016. The notice of denial erroneously indicated that the deposit at issue was made on July 22, 2013 rather than June 20, 2013, but in December 2016, the CWA issued a revised notice of denial correcting that mistake.

An administrative law judge (ALJ) conducted a hearing and issued an initial decision upholding the CWA's denial of the application. The ALJ found that C.A. failed to produce the missing information and missed the multiple deadlines. The ALJ concluded that R.A. violated N.J.A.C. 10:71-2.2(e).

The Director of DMAHS then issued the final decision adopting the ALJ's findings and conclusions. She reviewed the entire record and noted neither party filed exceptions. She acknowledged that the only issue is whether R.A. provided the necessary verifications for the CWA to make an eligibility determination. The Director found that "[t]he credible evidence in the record demonstrates that [R.A.] failed to provide the needed information prior to the June 29, 2016 denial

of benefits. Without this information, the [CWA] was unable to complete its eligibility determination and the denial was appropriate."

On appeal, R.A. argues that DMAHS erred by basing its decision on a void notice dated June 29, 2016, rather than one dated in December 2016; by upholding the denial of the application because R.A. produced the missing information; and for the first time, R.A. contends that a witness testified without being under oath.

We begin by addressing our standard of review and general governing legal principles. This court's review of DMAHS's determination is limited. Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986) (explaining that "we must give due deference to the views and regulations of an administrative agency charged with the responsibility of implementing legislative determinations"); see also Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (indicating that "[i]t is settled that [a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled . . . deference") (second alteration in original) (citations and internal quotation marks omitted).

A-1183-17T4

We have previously stated that "[w]here [an] action of an administrative agency is challenged, a presumption of reasonableness attaches to the action of an administrative agency[,] and the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable or capricious." Barone, 210 N.J. Super. at 285 (citation and internal quotation marks omitted). "Delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public." Ibid. Thus, our task is limited to deciding

> (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339 (App. Div. 2009) (citation omitted).]

The Medicaid program was created when Congress added Title XIX to the Social Security Act, 42 U.S.C.A. §§ 1396 to 1396w-5, "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297,

301 (1980). Participation in the Medicaid program is optional for states; however, "once a State elects to participate, it must comply with the requirements of Title XIX." Ibid. The New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5, authorizes New Jersey's participation in the Medicaid program.

The Commissioner of the New Jersey Department of Human Services has the power to issue regulations dealing with eligibility for medical assistance. N.J.S.A. 30:4D-7. DMAHS is a division of the Department of Human Services that operates the Medicaid program in New Jersey. N.J.S.A. 30:4D-4. The CWA grants or denies applications for Medicaid benefits. N.J.A.C. 10:71-3.15. Pursuant to this regulation, a CWA must determine "income and resource eligibility." N.J.A.C. 10:71-3.15(a). N.J.A.C. 10:71-4.1(b) defines resource to include

> any real or personal property which is owned by the applicant (or by those persons whose resources are deemed available to him or her, as described in N.J.A.C. 10:71-4.6) and which could be converted to cash to be used for his or her support and maintenance. Both liquid and non[-]liquid resources shall be considered in the determination of eligibility, unless such resources are specifically excluded under the provisions of N.J.A.C. 10:71-4.4(b).

The regulation explains that a resource must be "available" to be considered in determining eligibility. N.J.A.C. 10:71-4.1(c). A resource is "available" when: "1. [t]he person has the right, authority or power to liquidate real or personal property or his or her share of it; 2. [r]esources have been deemed available to the applicant ([pursuant to] N.J.A.C. 10:71-4.6 . . .); or 3. [r]esources arising from a third-party claim or action" under certain circumstances. Ibid. The value of the resource is "defined as the price that the resource can reasonably be expected to sell for on the open market in the particular geographic area minus any encumbrances (that is, its equity value)." N.J.A.C. 10:71-4.1(d). The regulation explains that "[t]he CWA shall verify the equity value of resources through appropriate and credible sources." N.J.A.C. 10:71-4.1(d)(3). "Resource eligibility is determined as of the first moment of the first day of each month." N.J.A.C. 10:71-4.1(e).

In delineating the responsibilities in the application process, the regulation states that the applicant is required to "[c]omplete, with assistance from the CWA if needed, any forms required by the CWA as a part of the application process." N.J.A.C. 10:71-2.2(e)(1). Moreover, the applicant is expected to "[a]ssist the CWA in securing evidence that corroborates his or her statements." N.J.A.C. 10:71-2.2(e)(2). "The process of establishing eligibility involves a

review of the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9. Retroactive eligibility for Medicaid is governed by the regulation and allows "outstanding unpaid medical bills incurred within the three month period prior to the month of application" to be compensated upon approval by the agency. N.J.A.C. 10:71-2.16(a).

Finally, and important to this appeal, the regulation notes that "[e]ligibility must be established in relation to each legal requirement to provide a valid basis for granting or denying medical assistance" and that an applicant's statements regarding eligibility are "evidence." N.J.A.C. 10:71-3.1(a), (b). "Incomplete or questionable statements shall be supplemented and substantiated by corroborative evidence from other pertinent sources, either documentary or non[-]documentary." N.J.A.C. 10:71-3.1(b). Thus, these regulations establish that an applicant must provide sufficient documentation to the agency to allow it to determine eligibility and corroborate the claims of the applicant.

The CWA provided R.A.'s representative with three written notices that she must provide verifications of her financial resources: February 26, 2016, April 13, 2016, and June 8, 2016. From the date of her initial application in January 2016 to her denial in June 2016, R.A. was allowed 166 days to provide verifications that were requested three times. The CWA extended the deadlines,

and clearly informed R.A. that the final deadline was June 23, 2016. Yet, R.A. failed to meet the final deadline.

We reject R.A.'s contention that DMAHS erred by basing its decision on the notice dated June 29, 2016, rather than December 2016. R.A. argues that the June 29, 2016 notice is void because it misidentified the transaction; it indicated that the deposit was made on July 22, 2013, instead of June 20, 2013. Consequently, she asserts the misidentification deprived her of proper notice of what information was outstanding before the CWA could determine eligibility. But while the application was pending, the CWA notified R.A. on multiple occasions about what verifications and information remained due. The CWA's December 2016 revised notice of denial, with the correct date of the deposit, removed any doubt – which could not have existed – because it re-explained the basis for the denial. Thus, her argument is without merit.

Finally, the documentary evidence and testimony from the Medical Coordinator for the nursing home and the CWA's caseworker show that the CWA gave R.A. sufficient notice of what it required while the application was pending. These witnesses testified after the ALJ administered the oath to tell the truth. Thus, they were sworn in. The caseworker testified that she had not received a copy of the settlement check, verification of how the proceeds were

spent, or an appraisal for the property. The Medical Coordinator admitted that she had not provided the requested verifications to support the application. Therefore, even without the testimony from the CWA's Fair Hearing Liaison – the individual who R.A. claims was not sworn in – there existed sufficient evidence in the record to support the ALJ's findings.

Applying the governing standards of review and legal principles, we conclude there exists substantial credible evidence in the record to support the Director's findings, and that the final agency decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1183-17T4