**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3038-16T3

IN THE MATTER OF
FRANK HARKCOM,
BAYSIDE STATE PRISON,
DEPARTMENT OF CORRECTIONS.

_____

Argued July 10, 2018 — Decided August 31, 2018

Before Judges O'Connor and Moynihan.

On appeal from the New Jersey Civil Service
Commission, Docket No. 2016-2769.

William G. Blaney argued the cause for
appellant Frank Harkcom (Blaney & Karavan, PC,
attorneys; John R. Dominy, of counsel and on
the brief).

Adam K. Phelps, Deputy Attorney General,
argued the cause for respondent Bayside State
Prison (Gurbir S. Grewal, Attorney General,
attorney; Jason W. Rockwell, Assistant
Attorney General, of counsel; Adam K. Phelps,
on the brief).

Alan C. Stephens, Deputy Attorney General,
argued the cause for respondent Civil Service
Commission (Gurbir S. Grewal, Attorney
General, attorney; Alan C. Stephens, on the
statement in lieu of brief).

PER CURIAM

Frank Harkcom appeals from the Civil Service Commission's final administrative action upholding the administrative law judge's (ALJ's) initial decision removing Harkcom from employment as a senior corrections officer with the New Jersey Department of Corrections (DOC). He argues: the ALJ, by denying his motion for a directed verdict, shifted the burden of proof to him, effectively forcing him to testify; and that the "Commission's wholesale adoption of the [ALJ's initial decision] improperly relied" on prior disciplinary infractions which the ALJ excluded for purposes of determining a penalty. We determine the motion at the conclusion of the DOC's case was mistakenly denied and reverse.

In a disciplinary action that preceded the matter here under review, Harkcom was removed from service following his arrest for both suspicion of and driving under the influence, and for reckless driving. After he was found guilty of reckless driving only, resulting in a driver's license suspension, his removal was reduced to a ten-day suspension. He was subsequently required to reapply for employment as an officer with the DOC.[1]

Based on its review, the DOC preferred charges against Harkcom alleging he falsified his reapplication by failing to report: a

---

[1] Harkcom does not challenge the DOC's reapplication requirement.

1990 still-active final restraining order (FRO) issued against him;[2] harassment charges lodged in 2012 and 2013; and that he lost his driver's license "due to reckless driving."[3] Harkcom was charged with: conduct unbecoming an employee, N.J.A.C. 4A:2-2.3(a)(6); other sufficient causes, N.J.A.C. 4A:2-2.3(a)(12); falsification: intentional misstatement of material fact in connection with work, employment application, attendance, or in any record, report investigation, 84-17 (as amended) (C-8); conduct unbecoming an employee, (C-11); prohibited by law from possessing or using a firearm (law enforcement personnel), (D-23); and violation of rule, regulation, policy, procedure, order or administrative decision, (E-1).

In its case-in-chief, a DOC Custody Recruitment Unit sergeant who regularly conducted investigations of employees seeking reinstatement, including Harkcom, identified database printouts from the New Jersey Automated Complaint System (ACS) and the Family Automated Case Tracking System (FACTS) that had been supplied to

---

[2] Although mentioned extensively by the Commission and DOC in their merits briefs, we note the failure to disclose the temporary restraining order (TRO) that preceded the FRO was not included in either the preliminary or final notices of disciplinary action.

[3] The copy of the reapplication provided to us reveals Harkcom disclosed that his license was suspended for six months and that the suspension was current. The ALJ did not make a finding regarding this allegation.

A-3038-16T3

him by other officers. These documents — admitted into evidence over Harkcom's hearsay objection because, according to the ALJ, they were relied on by the sergeant in making his recommendation that Harkcom's application not move forward — were alleged by the DOC to show proof that Harkcom had knowledge of the 1990 FRO and the 2012 and 2013 harassment charges. Harkcom's knowledge of these three incidents — undisclosed by him when he completed his reapplication — was a required element of the DOC's charges inasmuch as Harkcom averred he never had notice of same. During the DOC's case-in-chief, Harkcom moved the FRO into evidence. He highlighted that the blank portion of the FRO addressing service of the order was not completed and contended the document did not show that he was served.

In moving for a directed verdict at the conclusion of the DOC's case, Harkcom argued the DOC had not produced any competent evidence — other than the FRO which did not contain information about service on him — and that the residuum rule precluded a finding for the DOC whose hearsay evidence failed to prove that Harkcom had requisite knowledge of the charges and the FRO undisclosed on his reapplication.

The ALJ concluded the hearsay nature of the database records went "to the overall weight" he would give them at the conclusion of the case. He continued:

I don't view the [r]esiduum [r]ule to have hearsay documents carry the day for a motion to dismiss.

Furthermore as we all know in this tribunal our job is to gather the evidence, to hear testimony to -- as you pointed out, to admit competent documents to make a determination on those documents and to get into a posture where if necessary, you know, Civil Service Commission, I know right now we don't necessarily have a Civil Service Commission, but the way the procedure works is the Civil Service Commission and then if necessary an Appellate Division can review the record and I am further going to deny the motion because if -- in my opinion if we didn't and the case gets appealed and we get remanded for further testimony and I would like to avoid that step if, you know, if the Appellate Division overrules me based on the denial of the motion I can live with that. I'd rather not have to be here six months from now rehearing a part of this so for that -- for those two reasons I'm going to deny the motion.

Echoing an argument made during the motion that it would be "patently unfair" to require Harkcom to take the stand to refute charges that were sustained only by hearsay, effectively allowing the DOC to present competent evidence from Harkcom himself, Harkcom's counsel called his client to testify only because his motion was denied. That testimony formed the basis for a large segment of the ALJ's findings.

In considering all the evidence after both parties rested, the ALJ found the sergeant "relied on [the ACS and FACTS] printouts

A-3038-16T3

to determine that [Harkcom] had knowledge of the [2012 and 2013] harassment charges, and the FRO, and therefore falsified his reapplication by omitting the same." He noted the sergeant

> had no personal knowledge of whether [Harkcom] was aware of the harassment complaints but did indicate that they appeared to be signed by a citizen, not law enforcement. Upon review of the 2012 complaint, [the sergeant] determined the alleged perpetrator was a Mr. W, who resided at . . . a location [Harkcom] did not reside at during the time frame. . . .
>
> [The sergeant] reviewed a [c]ertified [c]opy of the [r]estraining [o]rder provided by [Harkcom's] counsel and maintained the position that even though it lacked any indication that it was served on [Harkcom] that he believed [Harkcom] was served. He had no reason to doubt the accuracy of the [FACTS].

Although the ALJ concluded Harkcom failed to include in his reapplication two other charges originally set forth in his 1997 application,[4] the ALJ's findings that Harkcom knew of the harassment charges and FRO were based on Harkcom's testimony — not on the evidence adduced during the DOC's case:

> I do not [find Harkcom] to be a credible witness and his testimony regarding his knowledge of the 1990 TRO and FRO, as well as the 2012 and 2013 [harassment] complaints filed against him, is not believable.

---

[4] Harkcom listed a 1981 criminal mischief conviction and 1989 disorderly conduct offense in his 1997 initial DOC application but did not include them in his reapplication. These charges do not appear in either the preliminary or final notice of disciplinary action.

[Harkcom] testified that he did not know about the 1990 TRO and FRO, or the 2012 and 2013 harassment complaints when he reapplied for employment in 2015. However, [Harkcom] was aware of the 1990 restraining orders even though he denies he was served with the TRO or FRO. Even if taken as true that he was not served the documents, [Harkcom] admitted his ex[-]wife told him about the TRO, and that he knew the Salem Sheriff had delivered something to his parents' house. That [Harkcom] was not aware of or simply forgot about an incident serious enough to [rise] to the level of a TRO and FRO being entered against him is not credible.

Similarly, [Harkcom] testified that he did not purposely fail to disclose the 2012 and 2013 harassment complaints because he was never aware of them. By his own admission, however, [Harkcom] went to [c]ourt, and mediation, to have the harassment complaints dismissed. As a result, I FIND as FACT that [Harkcom] was aware of the 1990 TRO and the FRO and also the 2012 and 2013 [harassment] charges filed against him and [failed] to disclose them on his 2015 reapplication.

Concluding the DOC proved the conduct unbecoming, falsification and other sufficient cause charges, the ALJ commented that Harkcom's assertions — the DOC failed to prove the charges against him by credible, competent evidence; the omissions on his reapplication were inadvertent, done without knowledge of the existence of the omitted incidents; the DOC failed to authenticate the database documents; and those documents failed to indicate Harkcom received notice of the omitted incidents — "would have some merit" if Harkcom had testified that the

7

harassment and domestic violence incidents had not occurred and the DOC was unable to corroborate the incidents. The ALJ found:

> The documents presented, however, were obtained during the course of [the sergeant's] background investigation. There has been no evidence that [the sergeant] or anyone else manufactured these documents or that [the sergeant] harbored any ill will toward [Harkcom]. Furthermore, [Harkcom] testified as to the events surrounding the documents in question which gives this tribunal the ability to more fully rely upon these documents.

We recognize our "limited role" in reviewing the Commission's final decision. Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980). "An appellate court affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539 (1980)). We will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). See also Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9-10 (2009). "We may not vacate an agency determination

because of doubts as to its wisdom or because the record may support more than one result[,]" In re N.J. Pinelands Comm'n Resolution PC4-00-89, 356 N.J. Super. 363, 372 (App. Div. 2003), but are "obliged to give due deference to the view of those charged with the responsibility of implementing legislative programs," ibid.

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006); see also McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002); Barone v. Dep't of Human Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987).

We first note that Harkcom's motion for a directed verdict, made at the conclusion of the DOC's case, was actually a motion for an involuntary dismissal — the administrative equivalent of a motion under Rule 4:37-2(b). See Altomare v. Cesaro, 70 N.J. Super. 54, 56 (App. Div. 1961) (recognizing a motion for involuntary dismissal occurs "[a]t the close of plaintiff's proofs" while a directed verdict takes place "at the close of the entire case"); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535-36 (1995) (discussing the difference between

involuntary dismissal, directed verdict, judgment notwithstanding the verdict, and summary judgment).

Although the DOC was not bound by the rules of evidence in the administrative proceeding, N.J.S.A. 52:14B-10(a)(1), and hearsay — subject to the ALJ's discretion — was admissible, N.J.A.C. 1:1-15.5(a), "some legally competent evidence must [have] exist[ed] to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness," N.J.A.C. 1:1-15.5(b). "Hearsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony." Weston v. State, 60 N.J. 36, 51 (1972). "But in the final analysis for a court to sustain an administrative decision, which affects the substantial rights of a party, there must be a residuum of legal and competent evidence in the record to support it." Ibid.

The DOC does not contend that the database documents were non-hearsay or exceptions to the hearsay rule. Indeed, no witness testified to qualify the database documents as admissible non-hearsay or hearsay exceptions, or to authenticate those documents. As such, the DOC failed to present competent evidence in its case-in-chief to prove the charges based on the two harassment complaints or the FRO. The admitted FRO, arguably competent

evidence, contained no information to prove Harkcom's knowledge of same. The service section of the FRO was not completed; as such, no knowledge-related deduction could be drawn from that document. Harkcom's knowledge of the harassment complaints and FRO was proved by hearsay alone. Absent competent evidence of that required element of the DOC's charges, Harkcom's motion should have been granted. See Pitts v. Newark Bd. of Educ., 337 N.J. Super. 331, 340 (App. Div. 2001) (considering a motion under Rule 4:37-2(b), and concluding dismissal was appropriate when evidence of an essential element of a plaintiff's case could not rationally be found by the fact-finder). The ALJ's denial of the motion was not supported by the evidence. We view the ruling as "clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

> While this feeling of "wrongness" is difficult to define, because it involves the reaction of [a] trained judge[] in the light of [the judge's] judicial and human experience, it can well be said that that which must exist in the reviewing mind is a definite conviction that the judge went so wide of the mark, a mistake must have been made. This sense of "wrongness" can arise in numerous ways -- from manifest lack of inherently credible evidence to support the finding, obvious overlooking or underevaluation of crucial evidence, a clearly unjust result, and many others.

11

> [Id. at 588-89 (quoting Johnson, 42 N.J. at 162).]

We recognize evidence introduced by the DOC in its case-in-chief included proof that Harkcom failed to disclose his criminal mischief charge and conviction from 1981 and his 1989 disorderly conduct — divulged in his initial DOC application — on his reapplication.[5] The ALJ ultimately found Harkcom's failure to disclose those incidents supported the DOC's charges, but did not mention them in deciding the motion. Although those charges — proved by competent evidence — could have buttressed both a denial of defendant's motion and an ultimate finding of falsification and conduct unbecoming, the DOC did not include those incidents in the preliminary or final notices of disciplinary action; it was improper to consider them for any purpose.

While we disagree with Harkcom's argument that the denial of his motion "improperly shifted the burden of proof" to him and required his testimony,[6] we determine the judge should have granted

---

[5] Harkcom's 1997 application was admitted into evidence in the DOC's case-in-chief over Harkcom's counsel's objection who argued the criminal mischief and disorderly conduct charges from the 1980s "can't be [relevant] because he's not charged with [them]." The ALJ admitted the document stating, "I'm certainly going to hear whatever arguments you have with regard to the weight and the relevancy of it when I render a decision."

[6] In our view, after the ALJ denied his motion, instead of testifying, Harkcom could have preserved his involuntary dismissal argument for appeal and rested.

A-3038-16T3

the motion based on the DOC's evidence — without considering Harkcom's testimony.  See Verdicchio v. Ricca, 179 N.J. 1, 30-31 n.4 (2004) (commenting that the "better practice" is for a trial court to decide a Rule 4:37-2(b) motion at the conclusion of plaintiff's proofs, in that a "reservation requires defendant to put forth a case," and that the ultimate ruling on the motion "must disregard evidence adduced on the defense case").  The case should not have proceeded past Harkcom's motion; as such we reverse the decisions by the ALJ and the Commission removing him from DOC's employ.

Because of our reversal, we need not address Harkcom's argument that the ALJ improperly used his prior disciplinary infractions, which had been excluded for purposes of determining a penalty, and that the Commission adopted wholesale the ALJ's sanction.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3038-16T3