812 A.2d 1113

IN THE MATTER OF THE NEW JERSEY PINELANDS
COMMISSION RESOLUTION PC4–00–89.

PACHOANGO ASSOCIATES AND DEVEL, L.C., PLAINTIFFS, AND
IVA SAMOST AND MAINLINE REALTY GROUP, LLC., PLAIN-
TIFFS/INTERVENORS–RESPONDENTS, v. THE NEW JERSEY
PINELANDS COMMISSION, TOWNSHIP OF EVESHAM, EVES-
HAM TOWNSHIP PLANNING BOARD, AND BURLINGTON
COUNTY PLANNING BOARD, DEFENDANTS, AND THE PINE-
LANDS PRESERVATION ALLIANCE, NEW JERSEY AUDU-
BON SOCIETY, AND NATURAL RESOURCES DEFENSE
COUNSEL, DEFENDANTS/INTERVENORS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 29, 2002—Decided January 3, 2003.

Before Judges PRESSLER, WALLACE, JR., and HOENS.

*Susan J. Kraham and Tom Borden* argued the cause for appellants Pinelands Preservation Alliance, New Jersey Audubon Society, and Natural Resources Defense Council (*Rutgers Environmental Law Clinic*, attorneys; *Marjorie Fox and Ms. Kraham*, of counsel and on the brief).

*Valerie W. Haynes*, Deputy Attorney General, argued the cause for respondent Pinelands Commission (*David Samson*, Attorney General of New Jersey, attorney; *Patrick DeAlmeida*, Deputy Attorney General, of counsel; *Ms. Haynes*, Deputy Attorney General, on the brief).

*Gregory A. Lomax* argued the cause for Iva Samost, and *J. Eric Kishbaugh* argued the cause for Mainline Realty Group (*Wolf, Block, Schorr and Solis–Cohen*, attorneys for Iva Samost; *Louis Giansante & Associates*, attorneys for Mainline Realty Group, L.L.C.; *Mr. Lomax, Carol Cobb, Thomas Paolini, James Greenberg and Mr. Kishbaugh*, on the joint brief).

*David Sampson*, Attorney General of New Jersey, for amicus curiae New Jersey Department of Environmental Protection (*Jose L. Fernandez*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

WALLACE, JR., J.A.D.

These separate appeals calendared back-to-back are consolidated for the purposes of this opinion.

In one appeal, appellants Pinelands Preservation Alliance, New Jersey Audubon Society, and the Natural Resources Defense Council (collectively, appellants) appeal from Resolution PC4–00–89 entered by the Pinelands Commission (the Commission) approving a settlement agreement containing modifications to a residential development plan, known as "The Sanctuary" (the development) in Evesham Township, Burlington County. The modifications resulted from the discovery after the initial approval of the development that the development contained habitat critical to the survival of a local population of timber rattlesnakes, an endangered species in New Jersey. Appellants argue that the

Commission erred in: 1) failing to make the requisite findings of fact in adopting the resolution; 2) failing to cite to legal authority, failing to comply with regulatory authority, and waiving compliance with the regulations; and 3) adopting the resolution approving the settlement even though its findings were not supported by substantial credible evidence and conflicted with decisions in other cases.

In the second appeal, appellants argue that the court erred in granting the motion for summary judgment brought by Pachoango Associates and DEVEL, L.C., the predecessors to Iva Samost, the property owner, and Mainline Realty, Inc., the developer (collectively, the developers) on the basis that appellants lacked standing under the Environmental Rights Act, *N.J.S.A.* 2A:35A–1 to – 14(ERA), to pursue this action for an alleged violation of the Endangered and Nongame Species Conservation Act, *N.J.S.A.* 23:2A–1 to –13 (ENSCA), and on the basis that the court lacked subject matter jurisdiction. We affirm both appeals.

We recite the relevant facts. In 1988, the Evesham Township Planning Board granted preliminary approval to build a portion of the development, located south of Hopewell Road, which was ultimately to include 300 single-family homes on approximately 700 acres.

On May 31, 1988, the Commission issued a "call-up" letter, or notice of a review, pursuant to *N.J.A.C.* 7:50–4.37(a), to the predecessor to the developers, setting forth its intention to review the preliminary approval to determine whether it was in compliance with the Comprehensive Management Plan (CMP). *N.J.A.C.* 7:50–1.8 to 7.11. The CMP includes regulations designed to protect the Pinelands endangered animal species, and provides in part that:

[n]o development shall be carried out unless it is designed to avoid irreversible adverse impacts on habitats that are critical to the survival of any local populations of those threatened or endangered animal species designated by the Department of Environmental Protection [DEP] pursuant to *N.J.S.A.* 23:2A–1 et seq.

[*N.J.A.C.* 7:50–6.33.]

The protection of endangered species was one of the concerns delineated in the call-up letter, but there was no mention of timber rattlesnakes because the environmental reports submitted during the review process made no reference to a population of that species.

Litigation ensued. The case was ultimately settled on January 19, 1993, and, in June 1994, the Evesham Planning Board granted final approval of sections I and II of the development. Thereafter, the predecessor to the developers constructed 103 homes.

In July 1998, the predecessor to the developers applied for and received final approval from the Planning Board for sections III, IV, and V. As a result of confirmed sightings of timber rattlesnakes, on October 21, 1998, the Commission again issued a call-up pursuant to *N.J.A.C.* 7:50–4.40(a) (Commission review following final local approval) to review the county and local Planning Board final approvals, based in part on the Commission's determination that the presence of the rattlesnakes raised an issue of compliance with the CMP, specifically *N.J.A.C.* 7:50–6.33. No further development could go forward pending completion of the Commission's review and approval. *N.J.A.C.* 7:50–4.40(c). The developers requested a hearing before the Office of Administrative Law (OAL) pursuant to *N.J.A.C.* 7:50–4.41.

In November 1998, the predecessor to the developers also filed a complaint in Superior Court, *Pachoango v. N.J. Pinelands Comm'n,* challenging the Commission's authority to call-up the final approvals on the grounds that the 1993 settlement had resolved all endangered species issues. In addition, the developers sought just compensation for a temporary or permanent taking of property.

In February 1999, the court granted appellants' application to intervene in the lawsuit, ordered the matter remanded to the Commission for further consideration, and placed the takings claim on the inactive list pending resolution by the Commission. Meanwhile, appellants filed a counterclaim alleging that the settlement violated ENSCA.

The Commission referred the matter to the OAL. In April 1999, Pachoango Associates conveyed its interest in the development to the developers, and the developers intervened in both the OAL and Law Division matters.

On April 21, 2000, the developers, DEP, Evesham Township, the Commission, and appellants entered into a partial settlement agreement releasing thirty-seven lots in sections III and IV from the Commission's call-up letter. The parties continued to debate various alternative plans designed to reach a comprehensive settlement that would protect the population of timber rattlesnakes, including the placement of a "snake-proof" barrier fence along the Kettle Run Creek, a stream running through the development, and the construction of a series of underground culverts or tunnels beneath a road in the development which crossed the corridor that linked the snakes' denning area to their foraging area. The parties also discussed reducing the overall size of the development, and the conveyance to the DEP by the developers of 1200 acres, some of which were contiguous to the development.

On October 10, 2000, appellants submitted to the Commission a notebook containing data of sightings of timber rattlesnakes within the development, and reports by Howard K. Reinert, an Associate Professor of Biology, and Robert T. Zappalorti, Executive Director of Herpetological Associates. In a certification accompanying his report, Reinert, a herpetologist, expressed his opposition to any further development on the basis that the remaining undeveloped portions represented "critical habitat" for the local population of timber rattlesnakes. In a subsequent report, Reinert discussed the effectiveness of fences and tunnels, indicating that there was "no scientific evidence" to show whether the snakes could be diverted from their established activity ranges without a negative impact upon their individual survival. He found the use of tunnels would be ineffective because, even if the snakes used the tunnel, it would force them "to pass through a very limited well-defined bottleneck" during a short period of time, thereby exposing them to predators.

Zappalorti, an expert for the Pinelands Preservation Alliance, noted that the proposed development would completely surround the only known timber rattlesnake overwintering site, leaving only ten to twenty percent of the surrounding area undeveloped. He asserted it would greatly reduce the snakes' important summer habitat, limiting their traditional migration paths to and from the hibernaculum, the basking habitat for gravid, or pregnant females, the foraging and feeding habitat, and the resting habitat for shedding skins. He was also critical of using fences.

In contrast, Kyle E. Rambo, of the Wildlife and Ecological Consulting Services, an expert retained by the developers, submitted a report dated October 19, 2000, in which he opined that fences along the southern side of Kettle Run creek would be "quite useful" in manipulating the timber rattlesnakes' travel patterns. He explained that, if the known den sites along Kettle Run creek were in fact part of a cluster of hibernacula, the timber rattlesnakes had probably historically dispersed in all directions in the spring. Rambo proposed a series of barriers, or "drift fences," to manipulate the snakes' movement away from hazardous areas, such as roadways and residential yards, toward their foraging areas. In addition, Rambo believed that a series of tunnels built under the roadways would provide "a safe alternative means of travel between habitat patches". He maintained that this combination of tunnels and fences had been successfully used in the United States and Europe to protect various species, including snakes.

All of the parties, except for appellants, reached a tentative settlement agreement on October 30, 2000. Kathleen Swigon, a Project Review Manager for the Commission, recommended approval of the settlement. She submitted a memorandum explaining that their "interest ... has been the permanent protection of habitats critical to the local population of [t]imber [r]attlesnakes." She noted that "[s]ince the size and range of the local population have not been fully established, the settlement is necessarily developed based upon the limited information available regarding

the movements of the snakes tracked on the sites." Additionally, "[b]ecause the activity ranges that are known for the limited number of tracked snakes includes significant areas off the Sanctuary parcel, a settlement or litigation that only limits additional development of the parcel would not fully address the habitat needs of the [t]imber rattlesnake."

Thus, according to Swigon, the proposed settlement

will provide permanent protection for an area that includes the hibernation area, contiguous areas of undisturbed habitats along the Kettle Run Creek stream corridor to the northeast of the development area and habitat within other contiguous drainage basins. In addition, the settlement agreement will provide for a monitoring program to collect additional information regarding the size, movements and range of the local population of timber rattlesnakes that will be valuable in the long term management of the local population. The settlement will also provide for ongoing management of the local population.

The Commission conducted a public hearing on November 3, 2000, during which appellants, Zappalorti, and other interested parties commented on the proposed settlement. At the conclusion of that meeting, the developers, DEP, Evesham Township, and the Commission, but not appellants, entered into a written settlement agreement whereby the developers agreed to reduce the number of homes by fifty-three and to revise the layout of the homes to limit development on the south side of the Kettle Run Creek to only twenty-four homes. Additionally, an approximately sixty to eighty-four acre corridor was to be maintained along Kettle Run Creek, surrounding the known rattlesnake dens by means of fencing and culverts coupled with deed restrictions that would preserve open space. The developers agreed to place $150,000 into an account to be used for inspecting and maintaining the culverts and fences, monitoring the snakes for fifteen years, relocating the snakes if necessary, and educating the residents on coexisting with rattlesnakes. The developers also agreed to post an additional $40,000 in escrow in the event that further fencing was deemed necessary.

Further, the developers agreed to sell at fair market value approximately 1100 acres of land to the DEP for Green Acres Preservation and to sell an additional 133 contiguous acres to

Evesham Township. This land would extend eastward to the western border of Wharton State Forest, thereby creating a "greenbelt" of thousands of contiguous acres permanently protected from future development. In exchange, the Commission agreed to withdraw its call-up of the local approvals for sections III, IV, and V, and to stipulate "that all [t]imber rattlesnake issues have been resolved." The parties also agreed to dismiss the related Law Division matter and the related OAL matter.

The Commission adopted resolution PC4–00–89, approving the settlement, which sets forth in part that

WHEREAS, the settlement protects habitats critical to the survival of the local population of [t]imber rattlesnakes by permanently protecting large contiguous areas of habitats for the species;

WHEREAS, given the location of the denning area in relation to the existing development, appropriate measures are being taken to protect the rattlesnakes;

WHEREAS, this settlement is not intended nor does it create a precedent regarding the management of [t]imber rattlesnakes or other endangered species;

WHEREAS, based on current information known to the Pinelands Commission, the measures proposed in this settlement would not be acceptable if proposed as part of an application for development for which no approvals had been granted and no development had occurred;

WHEREAS, the measures agreed to in the settlement are experimental in nature and are being implemented in order to resolve the current litigation. . . .

The developers then moved for summary judgment in the Law Division matter, seeking dismissal of appellant's counterclaim. Following some procedural delays, and after oral argument, the trial court granted the developers' motion for summary judgment dismissing appellants' counterclaim. The trial court held that the Commission had concurrent jurisdiction to enforce ENSCA, and once it assumed jurisdiction over issues concerning endangered species, its jurisdiction became exclusive. Thus, the court held that appellants had no standing in the Law Division to prosecute the alleged violation of ENSCA. The court also dismissed the developers' complaint on the basis that all issues had been resolved by settlement.

Appellants filed these separate appeals. We turn first to appellants' challenge to the Pinelands Commission's approval of the

settlement. In several arguments, appellants contend the Commission failed to make required findings; failed to identify the authority under which it acted; failed to comply with its own regulations; failed to comply with the CMP; and failed to comply with its decisions in other cases.

Initially, we note that we must approach appellants' claims in the context of the limited role of appellate review of a decision of an administrative agency. *In re Taylor*, 158 *N.J.* 644, 656–57, 731 *A*.2d 35 (1999). Our role in reviewing an administrative agency action is limited to three inquiries, specifically, whether: 1) the action violates express or implied legislative policies; 2) the record contains substantial evidence to support the agencies' findings; and 3) in applying the legislative policy to the facts, the agency erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. *Ibid.* We will reverse an agency decision if it is arbitrary, capricious, or unreasonable or if it is not supported by credible evidence in the record. *Ibid.* We may not vacate an agency determination because of doubts as to its wisdom or because the record may support more than one result. *See Brady v. Board of Review*, 152 *N.J.* 197, 210, 704 *A*.2d 547 (1997). In short, we are obliged to give due deference to the view of those charged with the responsibility of implementing legislative programs.

Our review of the record satisfies us that there is no reason to interfere with the determination by the Commission. There is ample evidence to support the Commission's decision to approve the settlement. The resolution and settlement agreement contain extensive findings to support the Commission's determination. Although the Commission did not expressly find under *N.J.A.C.* 7:50–6.33 that no irreversible "adverse impacts" on the rattlesnakes would occur, it did find that the settlement protects habitats critical to the survival of the local population of timber rattlesnakes by permanently protecting large contiguous areas of habitats for the species. Thus, the Commission was satisfied that the settlement would not run afoul of *N.J.A.C.* 7:50–6.33. To be

sure, the evidence was disputed whether the fencing and tunnels would adequately protect the timber rattlesnakes, but the Commission accepted the favorable reports. Moreover, the settlement agreement requires the developers to obtain all necessary approvals, "including any permit required pursuant to the Freshwater Wetlands Act or Stream Encroachment Permit from the Pinelands Commission, the DEP or any other approving agency." Contrary to appellants' contention, the adoption of the resolution was in compliance with the regulations and was not ultra vires. Furthermore, the Commission approved experimental measures in the form of fences and culverts to protect the timber rattlesnakes and did not approve experimentation with the snakes themselves. *See* *N.J.S.A.* 23:2A–7(d).

Simply put, the Commission did not act arbitrarily or abuse its discretion in reaching the settlement. The settlement was a practical solution for solving a problem that surfaced during construction of the later phases of the development. Appellants' several assertions of error are clearly without merit. *R.* 2:11–3(e)(1)(D) and (E).

■ We turn now to appellant's challenge to the judgment in the Law Division dismissing their counterclaim and granting summary judgment in favor of the developers. Appellants contend the court erred in finding they lacked standing under ERA to pursue this action for an alleged violation of ENSCA.

In its decision, the court found that "[t]he issues presented in this case clearly involve the same issues in the appeal from the Pinelands Commission." Thus, the court found that "[a] challenge to the quasi-judicial, ministerial or discretionary action of a State agency must be brought in the Appellate Division after the agency remedies have been exhausted." Additionally, the court held that appellants lacked standing to sue to enforce ENSCA. The court found that there was a "conflict or inconsistency" in this case between ERA, which affords standing to appellants to prosecute violations of ENSCA, and the Pinelands Protection Act, which does not recognize the right of individual persons to prosecute

perceived violations of its provisions or the provisions of ENSCA. The court found that the Commission had made specific provisions in the settlement agreement for the immediate protection of the timber rattlesnake and its habitat in conformance with *N.J.A.C.* 7:50–6.33. The court determined that the Commission had "at the very least, concurrent jurisdiction to enforce ENSCA," but once the Commission assumed jurisdiction over issues concerning endangered species, its jurisdiction became exclusive. The court held that appellants had no standing under ERA to prosecute the alleged violation of ENSCA because the Commission had fulfilled that role. Finally, the court dismissed all remaining claims on the basis that all issues had been resolved by the settlement. We agree with the trial court's conclusion that the issues pending before it were the same as the issues before the administrative agency. Consequently, our affirmance of the Commission's approval of the settlement agreement controls the disposition of this action. We make several additional comments.

Appellants contend DEP failed to act to enforce ENSCA, and, thus, they were entitled to sue for enforcement under ERA. The Legislature designated DEP as the agency responsible for implementation and enforcement of ENSCA, which provides that endangered species, such as the timber rattlesnake, "should be accorded special protection in order to maintain and to the extent possible enhance their numbers ..." *N.J.S.A.* 23:2A–2(b); *N.J.A.C.* 7:25–4.13(b). Here, DEP was involved in the settlement, as evidenced by attendance of its representatives at Commission meetings. Furthermore, in its amicus brief, DEP notes that the settlement was forged with its participation even though the Pinelands Commission was the lead agency. Thus, this is not a case where DEP failed to act, but rather a case where DEP reviewed another agency's determination and found it to be in compliance.

Although DEP, not the Commission, is primarily responsible for implementing and enforcing ENSCA, the Commission operates pursuant to a similar enforcement provision of *N.J.A.C.* 7:50–6.33.

The trial court found that, in conformance with this regulation, the Commission made specific provisions in the settlement agreement for the immediate protection of the timber rattlesnake and its habitat. Thus, both the Commission and DEP acted to protect the timber rattlesnakes.

Appellants assert and we agree that ERA can also be used to challenge inadequate enforcement of environmental laws by an agency. *Port of Monmouth Dev. Corp. v. Middletown Tp.*, 229 *N.J.Super.* 445, 451, 551 *A.*2d 1030 (App.Div.1988), *certif. denied,* 115 *N.J.* 59, 556 *A.*2d 1206 (1989)(ERA action permitted where DEP has "failed to act effectively"); *Superior Air Prods. Co. v. NL Industries, Inc.*, 216 *N.J.Super.* 46, 58–59, 522 *A.*2d 1025 (App.Div.1987)(private cause of action may lie where agency inadequately enforces a statute); *Howell Tp. v. Waste Disposal Inc.*, 207 *N.J.Super.* 80, 96, 504 *A.*2d 19 (App.Div.1986) (private cause of action may still lie if the effort provided by DEP enforcement proves insufficient). In *Howell,* we noted:

> the determination of whether DEP, in a given situation, has exercised properly its preemptive jurisdiction should be resolved by the court when it is asserted that, DEP has failed in its mission, neglected to take action essential to fulfill an obvious legislative purpose, or where it has not given adequate and fair consideration to local or individual interests. In other words where the state agency has failed or neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted, then a court should permit interested persons to continue with enforcement under the Environmental Rights Act.
>
> [*Ibid.*]

Thus, where an agency takes some action, but seeks "less than full relief available under relevant legislation ... there is a clear right granted to other 'persons' to seek such relief under the Environmental Rights Act." *Ibid. See Morris County Transfer Station, Inc. v. Frank's Sanitation Serv., Inc.*, 260 *N.J.Super.* 570, 577, 617 *A.*2d 291 (App.Div.1992) (ERA can be used to supplement actions taken by the government).

Nevertheless, we find no need to determine whether appellants established a genuine issue of fact as to whether the Commission and DEP failed to adequately enforce ENSCA in order to give

appellants standing to challenge the action of DEP. Pursuant to *N.J.S.A.* 2A:35A–8:

[i]f administrative or other proceedings are required or available to determine the legality of the defendant's conduct, the court shall remit the parties to such proceedings, except where immediate and irreparable damage will probably result, which proceedings shall be conducted in accordance with and subject to the applicable provision of law providing for such proceedings and the provisions of the "Administrative Procedure Act,"... In so remitting the court may grant temporary equitable relief where necessary for the protection of the environment or the interest of the public therein from pollution, impairment or destruction. *In so remitting the court shall retain jurisdiction of the action pending completion thereof for the purpose of determining whether the administrative findings made in such proceedings are supported by substantial evidence and the agency action is in conformance with the law.*

[Emphasis added.]

Here, the court remanded the developers' claims to the Commission, which subsequently referred the matter to the OAL. In March 1999, while on remand to the OAL, appellants filed their counterclaim against the developers for violation of ENSCA pursuant to ERA. Thereafter, the parties, except appellants, resolved the administrative matter.

Upon the completion of the administrative proceeding, the trial court, which continued to retain jurisdiction pursuant to *N.J.S.A.* 2A:35A–8, should have reviewed the administrative action and determined whether the Commission's action in approving the settlement was supported by substantial evidence and in conformance with the law. *Ibid.*

We are satisfied that, in light of our affirmance of the Commission's approval of the settlement, it would serve no useful purpose to remand the matter to the trial court. *See Bressman v. Gash,* 131 *N.J.* 517, 529, 621 *A.*2d 476 (1993). We exercise original jurisdiction pursuant to *R.* 2:10–5 and find that the Commission's and DEP's actions in approving the settlement were supported by substantial evidence and were in conformance with the law.

We add one further point. Appellants and DEP challenge the trial court's comment that once the Commission decides to assume jurisdiction, its jurisdiction becomes exclusive under the Pinelands Protection Act, *N.J.S.A.* 13:18A–1 et seq.

Pursuant to ENSCA, the Commissioner is responsible for implementation and enforcement of ENSCA. *See N.J.S.A.* 23:2A–4 to –10. The Commission, on the other hand, is responsible for implementing the CMP, which contains similar endangered species protection regulations. *N.J.A.C.* 7:50–6.33. We find no conflict between the authority of DEP and the Commission when regulating for the protection of threatened species. *See Barron v. State Health Benefits Comm'n.*, 343 *N.J.Super.* 583, 587, 779 *A.*2d 460 (App.Div.2001)("individual statutory provisions should not be read in isolation but rather as parts of a harmonious legislative plan"). Further, "[w]hen interpreting different statutory provisions, we are obligated to make every effort to harmonize them, even if they are in apparent conflict." *In re Gray–Sadler,* 164 *N.J.* 468, 485, 753 *A.*2d 1101 (2000). We are satisfied that the laws are complementary and not inconsistent. That is, DEP's authority is concurrent with the Commission's, and the two agencies should exercise their powers in a harmonious fashion. They did so here.

The actions challenged in both appeals are affirmed.