**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1541-17T1

DON JOHNSON,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued telephonically February 6, 2019 – Decided August 8, 2019

Before Judges Sabatino and Sumners.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 2-1150929.

Herbert J. Stayton, Jr., argued the cause for appellant (Ridgway & Stayton, LLC, attorneys; Herbert J. Stayton, Jr., on the brief).

Stephanie Kozic, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Stephanie Kozic, on the brief).

PER CURIAM

Don Johnson appeals from the October 18, 2017 final agency decision of the Board of Trustees of the Public Employees' Retirement System ("the Board") denying his claim for accidental disability retirement benefits under N.J.S.A. 43:16A-7, and instead granting him ordinary disability. The Board determined that Johnson's injury from a work-related motor vehicle accident was not the direct result of his total and permanent disability but was due to a pre-existing degenerative condition. Considering the substantial deference that must be accorded to the Board in such administrative matters when it applies the pertinent statutes within its area of expertise, we affirm.

Johnson was employed by the State of New Jersey as a Motor Vehicle Operator I, driving trucks for the Woodbine Developmental Center. On July 29, 2014, while working, he was driving a minivan that was involved in a head-on collision with another vehicle that entered his lane of traffic. Johnson was transported to the hospital via ambulance. He was released that day and prescribed medication after x-rays and a CT scan were negative or unremarkable for any injury to his head, neck, lower back and left wrist. Under the direction of Dr. Steven B. Kirshner, M.D., he thereafter received physical therapy for

sprains to his cervical spine and lumbar spine until March 2015. He also received a cortisone shot to his left wrist during that time.

In March 2015, Dr. Kirshner placed Johnson on permanent light duty for work due to a twenty-pound lift restriction based upon the results of a Functional Capacity Evaluation and Work Ability Assessment. He opined that Johnson's restriction was related to the July 2014 motor vehicle accident. Because Johnson's position did not allow for light duty, he did not return to work.

On June 29, 2015, Johnson, who was fifty-nine years old at the time, applied for accidental retirement disability arising from the motor vehicle accident.

On March 16, 2016, the Board denied Johnson's application but granted him deferred retirement, which provides lesser compensation, based upon his fourteen years of service. The Board determined the motor vehicle accident was undesigned and unexpected, but that he was not totally and permanently disabled from performing his job. Johnson disagreed with the Board's initial determination, so the matter was transmitted to the Office of Administrative Law for a fact-finding hearing.

In January 2017, two-and-a-half years after the accident and prior to the February 14 hearing, MRIs of Johnson's lumbar and cervical spine were

performed. As to the former, it revealed disc protrusions at L3-4 and L5-S1, degenerative disc disease at L3-4, L4-5 and L5-S1, and an enlargement of the facet joints at multiple levels. As to the latter, it revealed: herniated discs at C3-4, C4-5, C5-6, and C6-7; unconverted hypertrophy at C3-4; bilateral foraminal narrowing at C4-5; and central canal stenosis as well as bilateral uncontroverted hypertrophy at C5-6.

In addition, x-rays of Johnson's left wrist taken on February 1, revealed a radial scaphoid joint deformity in conjunction with cartilage loss, positive ulnar variance, and stable osteoarthritis to the distal lateral radius and scaphoid. There was also evidence of a prior left elbow/arm surgery from 1987.

At the hearing, Johnson testified, as did Dr. David O. Weiss, D.O., his medical expert. The Board presented the testimony of its medical expert, Dr. Arnold T. Berman, M.D. Both doctors examined Johnson and reviewed his medical records, and were determined by the Administrative Law Judge (ALJ) to be experts in orthopedics.[1]

On September 11, 2017, applying the standard set forth in Richardson v. Board of Trustees, Police and Firemen's Retirement System, 192 N.J. 189, 212-13 (2007), the ALJ denied Johnson's application for accidental disability

---

[1] Dr. Berman was also qualified as an expert in orthopedic surgery.

retirement benefits. The ALJ determined that the July 2014 motor vehicle accident was undesigned and unexpected, and that Johnson was totally and permanently disabled from performing his job, but that the accident was not the direct result of his disability. The ALJ found that Johnson gave credible testimony as did the two competing expert witness.

Dr. Weiss opined that Johnson was totally and permanently disabled from performing his job as a truck driver because of the motor vehicle accident. In support, he referenced his examination of Johnson, Dr. Kirshner's records, and the recent MRI and x-ray results.

Dr. Berman disagreed, opining that Johnson was not totally and permanently disabled from performing his job, and that his injury was the result of a pre-existing degenerative condition. He believed the MRIs showed a false positive and were consistent with a person of Johnson's age. He further pointed out that given that the MRIs were taken over two years after the accident and not used to treat Johnson, there was no clinical correlation to the accident in question.

The ALJ's decision accepted some of both of the doctors' opinions. In reaching his ruling, he explained:

> I FIND that Dr. Weiss was particularly
> CREDIBLE and BELIEVABLE. In addition to

reviewing all of the medical reports as well as comparing them to one another, he performed his own independent examination[,] which was consistent with the findings of the treating physicians. Also, Dr. Weiss examined [Johnson] about two and a half years after the incident, and determined that many of [Johnson's] complaints were still unresolved. Also, various objective tests supported his findings.

Matters of safety are implicated, given the nature of [Johnson's] job duties. If [Johnson] were called upon to perform the duties as presented in [his job description], his safety and/or that of others could be compromised. Accordingly, I FIND that [Johnson's] injuries do render him totally and permanently disabled from the performance of his job duties and that he is physically incapacitated from performing his usual or any other duty, given the parameters imposed by his employer.

As to the cause of [Johnson's] injuries, however, I give more weight to Dr. Berman's testimony. While acknowledging that he and Dr. Weiss made similar findings subsequent to their respective examinations of [Johnson], he underscored that they came to different conclusions. His analysis and explanations regarding the nature of [Johnson's] injuries and conditions were more persuasive; specifically that [Johnson's] multilevel herniated discs were more likely caused by a chronic degenerative condition and repetitive motion rather than trauma. The degenerative changes, observed also by Dr. Weiss in the MRI films, were consistent with findings in a similarly aged individual. His conclusion drew on his experience and knowledge of the condition but was also tailored to findings in [Johnson's] medical history and findings of his treating physician. Dr. Weiss, while ably offering his opinion to the contrary, was simply successfully rebutted in this

6

regard. Accordingly, I FIND that [Johnson's] condition responsible for his disability was not traumatically induced but rather is the result of pre[-]existing degenerative conditions and repetitive motion.

Johnson filed exceptions with the Board to the ALJ's decision. On October 18, 2017, the Board adopted the ALJ's initial decision as its final agency decision and denied Johnson's application for accidental disability retirement, and approved him for deferred retirement. This appeal ensued.

The sole issue before us is whether the record supports the Board's findings, as adopted from the ALJ's decision, that Johnson's total and permanent disability is not a direct result of the July 2014 motor vehicle accident but the result of a pre-existing condition.

In Richardson, the Court held that a public employee who seeks accidental disability retirement benefits must prove:

1. that he is permanently and totally disabled;

2. as a direct result of a traumatic event that is

a. identifiable as to time and place,

b. undesigned and unexpected, and

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

A-1541-17T1

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[192 N.J. at 212-13 (emphasis added).]

Before us, Johnson challenges the Board's factual findings. He argues the Board's ruling that his physical inability to perform his job was not the direct result of the 2014 motor vehicle accident but the result of a pre-existing degenerative condition, was not supported by the credible evidence in the record. He specifically contends that the testimony of Dr. Berman should have been disregarded. We are unpersuaded.

Absent arbitrary, unreasonable, or capricious action, or a lack of support in the record, "[a]n administrative agency's final quasi-judicial decision will be sustained . . . ." In re Herrmann, 192 N.J. 19, 27-28 (2007) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). The court "may not vacate an agency determination because of doubts as to its wisdom or because the record may support more than one result," but is "obliged to give due deference to the view of those charged with the responsibility of implementing legislative

programs." In re N.J. Pinelands Comm'n Resolution, 356 N.J. Super. 363, 372 (App. Div. 2003).

A "strong presumption of reasonableness attaches" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). The burden is upon the appellant to demonstrate grounds for reversal by showing "the agency's action was arbitrary, unreasonable[,] or capricious . . . ." Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993).

In reviewing administrative adjudications, an appellate court must undertake a "careful and principled consideration of the agency record and findings." Riverside Gen. Hosp. v. N.J. Hosp. Rate Setting Comm'n., 98 N.J. 458, 468 (1985) (citing Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)). If our review of the record leads us to conclude that the agency's finding is clearly erroneous, the decision is not entitled to judicial deference and must be set aside. L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 490 (1995). We may not simply rubber stamp an agency's decision. In re Taylor, 158 N.J. 644, 657 (1999).

According deference to the Board's fact-finding, <u>Circus Liquors, Inc. v. Governing Body of Middletown Twp.</u>, 199 N.J. 1, 9-10 (2009), we conclude its decision is neither "arbitrary, capricious, or unreasonable, or . . . lacks fair support in the record." <u>Russo v. Bd. of Trustees, Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011) (quoting <u>Herrmann</u>, 192 N.J. at 27-28). From our review of the record, the ALJ thoroughly evaluated Johnson's testimony, the medical records, and most importantly, the competing opinions of the parties' medical experts – neither of whom treated Johnson – as to whether his total and permanent disability from performing his job disability was the direct result of the 2014 motor vehicle accident. We are convinced there is substantial evidence in the record supporting the Board's final agency decision adopting the ALJ's ruling.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1541-17T1