**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1837-19

BAHIG TAWFELLOS,

    Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and HONEYWELL
INTERNATIONAL, INC.,

    Respondents.

_____

Submitted June 8, 2021 – Decided June 30, 2021

Before Judges Yannotti, Haas, and Mawla.

On appeal from the Board of Review, Department of Labor, Docket No. 187,577.

Bahig Tawfellos, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Donna Arons, Assistant Attorney General, of counsel; Christopher J. Hamner, Deputy Attorney General, on the brief).

PER CURIAM

Bahig Tawfellos appeals from a final determination of the Board of Review (Board), which upheld the reduction of his unemployment compensation benefits from $696 to sixty dollars per week, pursuant to N.J.S.A. 43:21-5a and N.J.A.C. 12:17-8.2. We affirm.

I.

We briefly summarize the pertinent facts and procedural history. On January 3, 2019, Honeywell International, Inc. (Honeywell) terminated Tawfellos from his position as staff engineer. He was sixty-five years old at the time. On June 9, 2019, Tawfellos filed a claim for unemployment benefits, which established a weekly benefit rate of $696, based on his earnings at Honeywell. On July 1, 2019, he began to receive a pension in the amount of $2,754.46 per month.

By notice mailed on July 10, 2019, the Director of Unemployment Insurance in the State's Department of Labor and Workforce Development (DOL) informed Tawfellos that he was eligible for benefits as of July 7, 2019, but his weekly benefit rate was being reduced to sixty dollars pursuant to N.J.S.A. 43:21-5a because "the employer on which [his] claim is based was the sole contributor to [his] pension." The notice stated that the benefits were being reduced by the full amount of his weekly pension payment.

A-1837-19

Tawfellos appealed the Director's decision to the Appeal Tribunal. He asserted, among other contentions, that the statute unfairly discriminates against individuals who collect a pension in periodic payments rather than a lump sum. He stated that not every individual who receives a pension has the option to receive a lump sum payment rather than periodic payments, and that persons who are entitled to periodic pension payments could delay receiving those payments until the unemployment benefits have been exhausted.

On October 7, 2019, Tawfellos appeared for a hearing before the Appeal Tribunal. He testified that his objection to the reduction of benefits was based on the law, which he believed to be discriminatory. He did not call any witnesses. On October 8, 2019, the Appeals Examiner issued a written decision finding that the reduction in benefits was required by N.J.S.A. 43:21-5a and N.J.A.C. 12:17-8.2.

Tawfellos appealed the decision of the Appeal Tribunal to the Board. He asserted that he was "baffled" because the law was unfair, and he did not understand the "rationale behind its existence." He stated that he had been trying to learn the reason for the law's existence and he had made inquiries to his local legislators, who advised him to contact his representative in the United States Congress. He said he had done so, but the staff for his representative had been

unable to provide any answers. He asserted that if the DOL is enforcing the law, it should be able to provide the rationale for its "existence."

The Board issued a final decision on November 21, 2019. The Board found that the Appeal Tribunal had provided Tawfellos a full and impartial hearing, and he had been provided the opportunity to present all relevant evidence. The Board affirmed the Appeal Tribunal's decision. This appeal followed.

II.

On appeal, Tawfellos argues that the Board's final decision should be reversed. He apparently recognizes that N.J.S.A. 43:21-5a applies to him. He argues, however, that the statute is discriminatory and unconstitutional. We disagree.

The scope of our review of a final decision of an administrative agency is strictly limited. In re Carter, 191 N.J. 474, 482 (2007). We will reverse an agency's decision only if it is arbitrary, capricious, or unreasonable. In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013). Therefore, our review of an agency's decision is limited to considering

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency

4

follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Id. at 385-86 (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

We must affirm an agency's findings of fact if "supported by adequate, substantial and credible evidence . . . ." In re Taylor, 158 N.J. 644, 656-57 (quoting Rova Farms Resort, Inc. v. Inv.'s Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We also must "give due deference to the view of those charged with the responsibility of implementing legislative programs." In re Reallocation of Prob. Officer, 441 N.J. Super. 434, 444 (App. Div. 2015) (quoting In re N.J. Pinelands Comm'n Resol. PC4-00-89, 356 N.J. Super. 363, 372 (App. Div. 2003)).

Here, the Appeal Tribunal and the Board found that Tawfellos's unemployment benefits must be reduced pursuant to N.J.S.A. 43:21-5a and N.J.A.C. 12:17-8.2. The statute provides in pertinent part:

the amount of benefits payable to an individual for any week which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or other similar periodic payment which is based on the previous work of such individual shall be reduced, but

5

not below zero, by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week; provided that such reduced weekly benefit rate shall be computed to the next lower multiple of [one dollar] if not already a multiple thereof and that any such reduction in the weekly benefit rate shall reduce the maximum total benefits of the individual during the benefit year . . . .

[N.J.S.A. 43:21-5a.]

In addition, the regulation states in pertinent part that if a claimant's pension payment

is made under a plan to which the individual did not contribute, the weekly and maximum amount of benefits payable to the individual shall be reduced by an amount equal to the amount of the pension . . . which is reasonably attributable to such week provided that the reduced weekly benefit amount shall be computed to the next lower multiple of [one dollar] if not already a multiple thereof.

[N.J.A.C. 12:17-8.2(a)(1).]

The Appeal Tribunal found Tawfellos was receiving monthly pension payments of $2,754.46. Moreover, Tawfellos's claim for unemployment benefits was based on his earnings at Honeywell, and he had not contributed to his pension. The Appeal Tribunal therefore reduced Tawfellos's weekly unemployment benefits by the full amount of his pension payments, from $696 to sixty dollars pursuant to N.J.S.A. 43:21-5a and N.J.A.C. 12:17-8.2(a)(1).

The Board accepted the Appeal Tribunal's decision. There is sufficient credible evidence in the record to support the Board's findings of fact and its decision is consistent with N.J.S.A. 43:21-5a and N.J.A.C. 12:17-8.2(a)(1).

III.

Tawfellos argues, however, that N.J.S.A. 43:21-5a is discriminatory and unconstitutional because the statute applies to persons who receive a pension, annuity, or "other similar periodic payment" but not to persons who receive such payments in a lump sum. He contends the statute unlawfully discriminates against persons who are involuntarily terminated before the date they may retire with a full pension.

He further argues that N.J.S.A. 43:21-5(a) unlawfully discriminates against older persons because it ties the reduction in unemployment benefits to the date the claimant retires with a full pension. He claims older persons are more likely to retire with a full pension and opt for monthly pension payments rather than a lump sum payment.

We note that in McKay v. Horn, 529 F. Supp. 847, 849 (D.N.J. 1981), the plaintiffs challenged the constitutionality of 26 U.S.C. § 3304(a)(15) and N.J.S.A. 43:21-5a, which both provide for the reduction of unemployment benefits payable to persons who simultaneously receive pension benefits or

other periodic payments attributable to the individual's prior work history. Among other claims, the plaintiffs in McKay alleged the federal statute and N.J.S.A. 43:21-5a denied them equal protection under the law in violation of the United States Constitution and the New Jersey Constitution, because these measures treat unemployment claimants who receive pension income more harshly that claimants who receive other forms of income. Id. at 859.

In addressing these claims, the federal district court applied the rational basis test. Id. at 860. The court noted that "the federal and state unemployment compensation [statutes] . . . impinge upon no fundamental interest, and do not create any classification which the Supreme Court has recognized to be 'suspect' . . . ." Ibid. (citations omitted).

The court found that 28 U.S.C.A. § 3304(a)(15) and N.J.S.A. 43:21-5a advance several rational legislative goals. Id. at 861-62. The federal and state statutes: (1) promote the financial integrity and viability of the unemployment compensation fund by reducing unnecessary expenditures; (2) eliminate duplicative payment of unemployment benefits to persons who are receiving adequate alternative wage-replacement income and are less likely to re-enter the labor market; and (3) promote uniform treatment by the states in the disqualification of income. Ibid.

The court noted that the plaintiffs had not directly challenged the legitimacy of the first two legislative goals.  Id. at 862.  They contended, however, that the statutes irrationally distinguish between pension and other sources of income by providing an offset for pensions but not for other types of income.  Ibid.  The plaintiffs also claimed the statutes irrationally provide an offset for periodic pension payments but not lump sum pension payments.  Ibid.

The court rejected these claims, noting that imperfect line drawing "does not, in and of itself, serve to invalidate the entire legislation."  Ibid.  The court stated that, "[w]here the challenged drawing of lines involves the distribution of government benefits, the Supreme Court has suggested that it is particularly inappropriate for the courts to substitute their judgment or policy preferences for those of the legislature."  Id. at 863 (citing U.S. R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179 (1980)).

The court held the statutes fulfilled the purpose of eliminating duplicative benefits to preserve the fiscal integrity of the unemployment compensation fund.  Ibid.  The court stated that the federal statute reflected a determination by Congress that persons receiving such income are less likely than others to return to the workforce and therefore are "at some remove" from the primary purpose

of the unemployment program, which is to provide economic assistance while an unemployed worker seeks other employment.  Ibid.

The court observed that, while this assumption "may not be accurate in every instance, it is nevertheless a reasonable one that Congress was entitled to make."  Ibid. (citing Fritz, 449 U.S. at 178).  The court noted the federal statute applied only to dual benefits funded by the same employer during the "base period" upon which the unemployment benefits are measured.  Ibid.  The court further found that promotion of uniform enforcement of the unemployment program by participating states was "an additional goal which may legitimately be pursued by Congress."  Id. at 864.

We also note that in Moyer v. Board of Review, 183 N.J. Super. 543, 544-45 (App. Div. 1982), this court rejected a constitutional challenge to N.J.S.A. 43:21-5a.  In that case, the appellant applied for unemployment benefits, but his application was denied because his "military pension entirely offset his weekly unemployment benefit entitlement in accordance with N.J.S.A. 43:21-5(a)."  Id. at 545.  The appellant argued that the offset provision was unconstitutional on due process grounds because "contributions into a fund are required from which an individual situated as he is receives no benefits" and on equal protection

grounds because "only some paying into the fund entertain a "reasonable expectation" of receiving benefits." Ibid.

We noted that "constitutional equal protection does not prohibit difference in treatment between and among individuals in the area of social welfare." Id. at 546 (citing Richardson v. Belcher, 404 U.S. 78, 81 (1971) and McKay, 529 F. Supp. at 847). We stated that:

> [T]he right of all persons must rest upon the same rule under similar circumstances, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32 (1928). . . . It is essential that the classification itself be reasonable and not arbitrary, and be based upon material and substantial distinctions and differences reasonably related to the subject matter of the legislation or considerations of policy, and that there be uniformity within the class.
>
> [Ibid. (alterations in original) (quoting Washington Nat'l Ins. Co. v. Bd. of Rev., 1 N.J. 545, 553 (1949)).]

We held that N.J.S.A. 43:231-5(a) satisfied the rational basis test and was constitutional. Ibid.

We agree with the analysis in McKay and Moyer. We therefore conclude that N.J.S.A. 43-21-5a rationally promotes the fiscal integrity of the unemployment compensation program by eliminating duplicative wage-replacement benefits. The statute does not irrationally distinguish between

11

A-1837-19

periodic pension payments and other forms of income. In addition, the statute does not unlawfully discriminate against unemployment claimants on the basis of age.

In this appeal, Tawfellos also argues: (1) the DOL had a duty to explain the "existence" of the statute and its legislative history; (2) Honeywell improperly took advantage of the statutory offset to avoid its "ethical responsibilit[ies] towards its laid off employee"; (3) the law is vague and subject to varying interpretations; and (4) the Board's "rationale" is based on "antiquated socioeconomical circumstances" which are no longer "valid." These arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION