**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3130-22

CHERYL KRESS,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF
THE TEACHERS' PENSION
AND ANNUITY FUND,

      Respondent-Respondent.

_____

Argued December 12, 2024 – Decided December 27, 2024

Before Judges Natali and Vinci.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury, Agency Docket No. TPAF No. xx7465.

Darren M. Gelber argued the cause for appellant (Wilentz, Goldman & Spitzer PA, attorneys; Darren M. Gelber, of counsel; Samuel J. Halpern, on the briefs).

Joseph Palumbo, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant

Attorney General, of counsel; Porter R. Strickler, on the brief).

PER CURIAM

Petitioner Cheryl Kress appeals from the May 5, 2023 final administrative decision of the Board of Trustees (Board) of the Teachers' Pension and Annuity Fund (TPAF) rejecting her retroactive salary increases as creditable compensation for pension calculation purposes. Based on our review of the record and applicable legal principles, we affirm.

Effective September 1, 1991, Kress was enrolled in TPAF as a teacher. On September 1, 1997, she transferred to the Kenilworth Board of Education (BOE), where she continued to work as a teacher until her resignation on April 30, 2021. On September 20, 2019, she filed a wage discrimination lawsuit against the BOE asserting causes of action based on the Diane B. Allen Equal Pay Act, N.J.S.A. 10:5-12(t) (Equal Pay Act), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 (NJLAD). Kress alleged since her hiring in 1997, unlike her male colleagues, she did not receive full credit for her prior work experience and did not receive the same annual pay increases received by her male colleagues.

On March 8, 2021, she submitted a letter of resignation with an effective resignation date of May 1, 2021. On April 12, 2021, Kress, the BOE, and the

Kenilworth Education Association (KEA) entered into a settlement agreement under which the BOE and KEA agreed to pay $100,000 in exchange for a general release and dismissal of the lawsuit.[1]  The settlement agreement allocated the entire settlement amount to her final three years of employment and provided for retroactive salary increases from $103,682 to $135,765 for 2018-2019; $105,359 to $137,442 for 2019-2020; and $106,934 to $147,038 for 2020-2021. The settlement agreement required that Kress resign effective May 1, 2021.  The settlement was contingent on her resignation.  On April 16, 2021, she applied for retirement effective May 1.

On June 3, 2021, the Board approved her retirement application based on a final salary of $105,003.66.  On August 5, 2022, in response to Kress's inquiry regarding her benefits, the Division of Pensions and Benefits (Division) advised her the retroactive salary increases pursuant to the settlement agreement would "not be used in the recalculation of [her] benefits since it is considered extra compensation that is not pensionable per N.J.A.C. 17:3-4.1."  The Division determined the "settlement was processed based on [her] anticipated retirement and to only increase the salary for the period that would be used in calculating [her] retirement benefit."  In addition, "there is no justification for the

---

[1]  After attorneys' fees were deducted, Kress received $96,250.

calculation of the retroactive salary portion or the justification for the new annual salary."

Kress appealed to the Board. On January 5, 2023, the Board voted to deny her request for salary credit based on the settlement agreement. Kress objected to the Board's decision and requested a hearing in the Office of Administrative Law (OAL). On April 13, 2023, the Board denied her request for a hearing. On May 5, 2023, the Board issued its final administrative decision. The Board found "structuring the agreement to place all of the back pay into only the final three years of employment, the years upon which her pension is calculated[,] rather than during all of the years . . . Kress maintained she was denied equal pay, increases her pension benefit in violation of TPAF statutes and regulations," specifically, N.J.S.A. 18A:66-2(d)(1) and N.J.A.C. 17:3-4.1.

The Board noted the "civil lawsuit was not adjudicated" and "there was no court order or legal judgment that concluded she was entitled to an increase in salary as a matter of law." It further found, "because there is no clear connection between the settled salary increase and rendered service or across the board salary increases, nor is it required as a matter of law, the payment of additional salary is extra compensation offered as an inducement to drop her lawsuit and leave employment with" the BOE. "The $32,083 per year increase

A-3130-22

in compensation was determined to be extra compensation that was made primarily in anticipation of her retirement, contrary to N.J.A.C. 17:3-4.1, and is not creditable for pension calculation purposes." The Board denied the request for an OAL hearing "because this matter does not entail any disputed questions of fact."

On appeal, Kress argues the Board's "failure to give full force and effect to the . . . settlement agreement . . . violated express legislative policies." Specifically, that "the retroactive salary payments were made in order to equalize Kress'[s] salary with that of her male colleagues . . . in compliance with the Equal Pay Act and NJLAD mandates." She also contends the Board improperly rejected her request for a hearing because "there exist disputed facts . . . concern[ing] how and when Kress acquired knowledge of the salary disparities as well as the [BOE's] efforts to obfuscate the facts." "[H]ad the facts been made known earlier . . . in [her] tenure . . . she might well have litigated her claims earlier, clearly dispelling any presumption that her salary increases were in anticipation of retirement."

Our scope of review of an administrative agency's final determination is limited. In re Carter, 191 N.J. 474, 482 (2007). We accord a "strong presumption of reasonableness" to the agency's exercise of its statutorily

delegated responsibilities. City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980). The burden of showing the agency's action was arbitrary, unreasonable, or capricious rests upon the appellant. Barone v. Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987).

The reviewing court "should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua–West Jersey Hosp. Voorhees for a Certif. of Need, 194 N.J. 413, 422 (2008); see also Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9-10 (2009). Nevertheless, an appellate court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

Absent arbitrary, unreasonable, or capricious action, or a lack of support in the record, "[a]n administrative agency's final quasi-judicial decision will be sustained." In re Herrmann, 192 N.J. 19, 27-28 (2007) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). The court "may not vacate an agency

determination because of doubts as to its wisdom or because the record may support more than one result," but is "obliged to give due deference to the view of those charged with the responsibility of implementing legislative programs." In re N.J. Pinelands Comm'n Resol. PC4-00-89, 356 N.J. Super. 363, 372 (App. Div. 2003) (citing Brady v. Bd. of Review, 152 N.J. 197, 210 (1997)).

Under the statute that governs TPAF, salary adjustments that are granted primarily in anticipation of retirement are not included as part of a member's "compensation" when calculating the member's pension:

> "Compensation" means the contractual salary, for services as a teacher as defined in this article, which is in accordance with established salary policies of the member's employer for all employees in the same position but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement or additional remuneration for performing temporary or extracurricular duties beyond the regular school day or the regular school year.
>
> [N.J.S.A. 18A:66-2(d)(1).]

In addition, the applicable regulations provide "[e]xtra compensation shall not be considered creditable for benefits . . ." N.J.A.C. 17:3-4.1(c). Extra compensation is defined as:

> [I]ndividual salary adjustments, which are granted primarily in anticipation of a member's retirement; additional remuneration for performing temporary

7

duties beyond the regular work day or work year or additional remuneration for performing duties that are not integral to the effective functioning of the regular school curriculum.

[N.J.A.C. 17:3-1A.1.]

Forms of extra compensation include:

vii. Individual retroactive salary adjustments where no sufficient justification is provided that the adjustment was granted primarily for a reason other than retirement;

viii. Individual adjustments to place a member at the maximum of his or her salary range in the final years of service where no sufficient justification is provided that the adjustment was granted primarily for a reason other than retirement;

. . . .

xi. Retroactive increments or adjustments made at or near the end of a member's service, unless the adjustment was the result of an across-the-board adjustment for similarly situated personnel;

. . . .

[N.J.A.C. 17:3-4.1(1)(a)(vii) to (viii), (xi).]

Specifically, with respect to settlements:

If the award or settlement is structured in such a way as to provide the member with a substantial increase of creditable salary at or near the end of the member's service, or a substantial increase in retirement benefits, or provides service credit that entitles a member to file

for retirement benefits to which they would not otherwise have qualified, the award or settlement shall be reviewed by the Division.  If the Division determines that the pension benefit was part of the negotiations for the award or settlement, or if the award or settlement includes extra compensation as defined by the various retirement systems, the Division shall determine the compensation and/or service credit to be used to calculate the retirement allowance, and the member shall have the pension contributions for the salaries based on the award refunded without interest.

[N.J.A.C. 17:1-2.18(c).]

"An evidentiary hearing is mandated only when the proposed administrative action is based on disputed adjudicatory facts."  Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 120 (App. Div. 1995) (quoting In re Farmers' Mut. Fire Assurance Ass'n of N.J., 256 N.J. Super. 607, 618 (App. Div. 1992)).  The Board "determine[s] whether to grant an administrative hearing based upon the standards for a contested case hearing set forth in the Administrative Procedures Act, N.J.S.A. 52:14B-1 to -31, and the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1 to -21."  N.J.A.C. 17:4-1.7(b). "If the . . . appeal involves solely a question of law, the Board may retain the matter and issue a final administrative determination."  N.J.A.C. 17:4-1.7(e).

We are persuaded the Board's decision was not arbitrary, unreasonable, or capricious, and is supported by substantial evidence in the record.  It is

undisputed Kress alleged in her discrimination lawsuit damages beginning in 1997 but allocated the settlement amount only to her final three years of employment, which would have substantially increased her pension benefits. It is also undisputed the settlement was contingent on her resignation, and she did, in fact, resign effective May 1, 2021, as required by the settlement agreement. Based on the record and timeline, the Board could reasonably conclude the retroactive salary increases were given primarily in anticipation of retirement. The Board also could reasonably conclude the retroactive increases were extra compensation as defined in N.J.A.C. 17:3-4.1(a)(1). Specifically, that the "[r]etroactive . . . adjustments [were] made at or near the end of [her] service" and were not "the result of an across-the-board adjustment for all similarly situated personnel," N.J.A.C. 17:3-4.1(a)(1)(xi), and were not "granted primarily for a reason other than retirement." N.J.A.C. 17:3-4.1(a)(1)(vii).

In In re Puglisi, a police officer filed a civil rights lawsuit against his employer, the city, alleging various city administrators and elected officials engaged in political discrimination. 186 N.J. 529, 531 (2006). The officer reached a settlement with the city, resulting in his promotion to the rank of captain, his immediate commencement of a one-year terminal leave period at a captain's salary, and his agreement to retire at the end of the terminal leave

period.  Ibid.  The Court concluded the payments made pursuant to the settlement were in anticipation of his retirement and affirmed the denial of pension credit for the settlement proceeds.  Id. at 534.

The Court explained the statutory definition of compensation that excludes salary increases at the end of an employee's career "protect[s] the actuarial soundness of the pension fund by prohibiting the use of 'ad hoc salary increases intended to increase retirement allowances without adequate compensation to the [pension] fund' in calculating pensions."  Ibid.; see also Bd. of Trs. of Tchrs.' Pension & Annuity Fund of N.J. v. La Tronica, 81 N.J. Super. 461, 470-71 (App. Div. 1963) (describing unusual salary increases or arrangements in the final years of employment as "the local board['s] . . . grand gesture of farewell at little expense" because the local board is not itself responsible for the pension payments that must follow over many years).

Kress's reliance on In re Snellbaker,  414 N.J. Super. 26 (App. Div. 2010), is not convincing.  Snellbaker was the police chief of Atlantic City, and in that position, he received no raises between 2002 and 2006, while his subordinate deputy chiefs received annual raises.  Id. at 29-30.  He filed a lawsuit against the city and sought, among other relief, retroactive salary increases for 2002 through 2005 under N.J.S.A. 40A:14-179, which required the police chief to be

paid more than the amount paid to the highest-ranking subordinate officer. Id. at 30. The lawsuit was settled, and the settlement retroactively increased Snellbaker's salary for the period 2002 to 2005 to bring the city into compliance with the statute. Id. at 31. The salary increases were identical to the raises Snellbaker's subordinates received during the same period and were applied to every year he alleged he was underpaid. Id. at 32. Snellbaker did not involve an "individual salary adjustment," but instead involved a settlement intended to comply with a statutory mandate. Id. at 40-41.

Kress's retroactive salary increases, unlike those in Snellbaker, were not required by statute and were not applied to all the years in which she claimed she was underpaid. Rather, the salary increases were allocated only to the final three years of her employment. This led the Board to reasonably conclude the increases, which coincided with the years used to calculate her pension benefits, were granted primarily in anticipation of retirement, and therefore, were not compensation as defined in N.J.S.A. 18A:66-2(d)(1). The Board also reasonably concluded the retroactive salary increases were "extra compensation" properly excluded as creditable for benefits pursuant to N.J.A.C. 17:3-4.1(c). There was ample evidence in the record to support the Board's decision.

We are satisfied the Board did not err by refusing to grant an OAL hearing. Kress contends a hearing was required because "there exist disputed facts . . . concern[ing] how and when Kress acquired knowledge of the salary disparities as well as the [BOE's] efforts to obfuscate the facts." However, the relevant facts regarding the settlement and her retroactive salary adjustments were not disputed. We are persuaded by the Board's argument that neither when Kress learned of the alleged salary disparities nor the BOE's alleged conduct were material facts that might have affected its decision. To the extent we have not specifically addressed any remaining arguments, it is because the Board's decision is supported by sufficient credible evidence on the record as a whole. R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3130-22